CLIPPER MINING COMPANY *v.* ELI MINING AND LAND COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 76. Argued November 13, 1903.—Decided May 2, 1904.

This court has no jurisdiction in an action at law to review the conclusions of the highest court of a State upon questions of fact.

The land department has the power to set aside a mining location and restore the ground to the public domain, but a mere rejection of an application for a patent does not have that effect. A second or amended application may be made and further testimony offered to show the applicant's right to a patent.

Although a placer location is not a location of lodes and veins beneath the surface, but simply a claim of a tract of ground for the sake of loose deposits upon or near the surface, and the patent to a placer claim does not convey the title to a known vein or lode within its area unless specifically applied and paid for, the patentee takes title to any lode or vein not known to exist at the time of the patent and subsequently discovered.

The owner of a valid mining location, whether lode or placer, has the right to the exclusive possession and enjoyment of all the surface included within the lines of the location.

One going upon a valid placer location to prospect for unknown lodes and veins against the will of the placer owner, is a trespasser and cannot

initiate a right maintainable in an action at law to the lode and vein claims within the placer limits which he may discover during such trespass.

The owner of a placer location may maintain an adverse action against an applicant for a patent of a lode claim, when the latter's application includes part of the placer grounds.

*Quære*, and not decided, what the powers of a court of equity may be as to conflicting placer and lode locations.

On December 12, 1877, A. D. Searl and seven associates made a location of placer mining ground near the new mining camp of Leadville. The claim embraced at that time 157.02 acres of land. The original locators shortly conveyed all their interest to Searl, who applied for a patent on July 5, 1878. The application was met at the land office with a multitude of adverse claims. Settlements were made with some of the contestants, and on November 10, 1882, an amended application for patent was filed, including only $101\frac{916}{1000}$ acres. This application was rejected by the Commissioner of the General Land Office on March 6, 1886, and his decision was affirmed by the Secretary of the Interior on November 13, 1890. On November 25, 1890, four lode claims, known as the Clipper, Castle, Congress and Capital, were located by parties other than the owners of the placer claim within the exterior boundaries of that claim. These four lode claims became by mesne conveyances the property of the Clipper Mining Company. It applied for a patent, and on November 23, 1893, the defendants in error, as the owners of the Searl placer location, filed an adverse claim and commenced this action in the District Court of Lake County, in support of that claim. Judgment was rendered in favor of the plaintiffs, which was affirmed by the Supreme Court of the State, 29 Colorado, 377, and thereafter this writ of error was sued out.

*Mr. W. H. Bryant,* with whom *Mr. C. S. Thomas* and *Mr. W. H. Lee* were on the brief, for plaintiff in error.

*Mr. John A. Ewing* and *Mr. Aldis B. Browne,* with whom *Mr. Charles Cavender* and *Mr. Alexander Britton* were on the brief, for defendants in error.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The location of the placer mining claim and both the original and amended applications for patent thereof were long prior to the locations of the lode claims, and the contention of the plaintiffs is, that they, by virtue of their location, became entitled to the exclusive possession of the surface ground; that the entry of the lode discoverers was tortious and could not create an adverse right, even though by means of their entry and explorations they discovered the lode claims. The defendant, on the other hand, contends that the original location of the placer claim was wrongful, for the reason that the ground included within it was not placer mining ground; that the intent of the locators was not placer mining but the acquisition of title to a large tract of ground contiguous to the new mining camp of Leadville, and likely to become a part of the townsite. In fact, it was thereafter included within the limits of the town, and on it streets and alleys have been laid out and many houses built and occupied by individuals claiming adversely to the placer location.

It is the settled rule that this court, in an action at law at least, has no jurisdiction to review the conclusions of the highest court of a State upon questions of fact. *River Bridge Co.* v. *Kansas Pac. Ry. Co.*, 92 U. S. 315; *Dower* v. *Richards*, 151 U. S. 658; *Israel* v. *Arthur*, 152 U. S. 355; *Noble* v. *Mitchell*, 164 U. S. 367; *Hedrick* v. *Atchison &c. Railroad*, 167 U. S. 673, 677; *Turner* v. *New York*, 168 U. S. 90, 95; *Egan* v. *Hart*, 165 U. S. 188. It must, therefore, be accepted that the Searl placer claim was duly located, that the annual labor required by law had been performed up to the time of the litigation, that there was a subsisting valid placer location, and that the lodes were discovered by their locators within the boundaries of the placer claim subsequently to its location. So the trial court specifically found; and its finding was approved by the Supreme Court.

As against this, it is contended that the Land Department

held that the ground within the Searl location was not placer mining ground, nor subject to entry as a placer claim, that such holding by the department must be accepted as conclusive in the courts, and therefore that the tract should be adjudged public land and open to exploration for lode claims and to location by any discoverer of such claims. It is true that the Commissioner of the General Land Office, in rejecting the amended application for the placer patent, said that he was not satisfied that the land was placer ground or that the requisite expenditure had been made, and further that the locators had not acted in good faith, but were attempting to acquire title to the land on account of its value for townsite purposes and for the lodes supposed to be contained therein. This decision was affirmed by the Secretary of the Interior; but notwithstanding this expression of opinion by these officials, all that was done was to reject the application for a patent. As said thereafter by the Secretary of the Interior upon an application of the Clipper Mining Company for a patent for the lode claims here in dispute:

"The judgment of the department in the Searl placer case went only to the extent of rejecting the application for patent. The department did not assume to declare the location of the placer void, as contended by counsel, nor did the judgment affect the possessory rights of the contestant to it." 22 L. D. 527.

So far as the record shows—and the record does not purport to contain all the evidence—the placer location is still recognized in the department as a valid location. Such also was the finding of the court, and being so there is nothing to prevent a subsequent application for a patent and further testimony to show the claimant's right to one. Undoubtedly when the department rejected the application for a patent it could have gone further and set aside the placer location, and it can now, by direct proceedings upon notice, set it aside and restore the land to the public domain. But it has not done so, and therefore it is useless to consider what rights other parties might then have.

The fact that many years have elapsed since the original location of the placer claim and that no patent has yet been issued therefor does not affect its validity, for it is a well-known fact, as stated by the Court of Appeals in *Cosmos Exploration Company* v. *Gray Eagle Oil Company,* 112 Fed. Rep. 4, 16, that "some of the richest mineral lands in the United States, which have been owned, occupied and developed by individuals and corporations for many years, have never been patented."

The views entertained by the Supreme Court of the law applicable to the facts of this case are disclosed by the following quotation from its opinion. After referring to one of its previous decisions, known as the *Mt. Rosa* case, it said:

"If, in the case at bar, the lode claims were known to exist at the time of the entry of defendant's grantors upon the Searl placer, under the decision in the *Mt. Rosa* case the entry was not unlawful; but if, on the contrary, the veins were then unknown, by the same decision the right of possession of this ground belonged to the owners of the placer location. Their right of possession included these unknown veins and the entry for prospecting was a trespass, and no title could thereby be initiated.    *    *    *    *    *    *    *

"Our conclusion, therefore, is that one may not go upon a prior valid placer location to prospect for unknown lodes and get title to lode claims thereafter discovered and located in this manner and within the placer boundaries, unless the placer owner has abandoned his claim, waives the trespass, or by his conduct is estopped to complain of it. If the trial court intended to rule that in no circumstances may one, before application for a patent of a placer claim, go upon the ground within its exterior boundaries for the purpose of locating a lode, it went too far; yet as general language in an opinion must be taken in connection with the facts of the particular case, the ruling here should be limited to the facts disclosed by the record, and no prejudicial error was committed. For, under the authorities, a prospector may not enter upon a prior placer location for the purpose of prospecting for, or locating, unknown

lodes or veins; and to uphold the judgment we must presume that the evidence before the trial court showed that the veins or lodes upon which the defendant's grantors based their locations were unknown when they entered upon the Searl placer for the purpose of prospecting."

The law under which these locations were all made is to be found in chap. 6 of Title 32, Rev. Stat. Section 2319 of that chapter reads:

"All valuable mineral deposits of lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase."

Section 2320 provides for the location of mining claims upon veins or lodes.

By section 2322 it is provided that—

"The locators of all mining locations . . . on any mineral vein, lode or ledge, situated on the public domain, . . . shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically."

And by section 2329:

"Claims usually called 'placers,' including all forms of deposit, excepting veins of quartz, or other rock in place, shall be subject to entry and patent, under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims."

Section 2333 is as follows:

"Where the same person, association, or corporation is in possession of a placer claim, and also a vein or lode included within the boundaries thereof, application shall be made for a patent for the placer claim, with the statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim, subject to the provisions of this chapter, including such vein or lode, upon the payment of five dollars per acre for

such vein or lode claim, and twenty-five feet of surface on each
side thereof.   The remainder of the placer claim, or any placer
claim not embracing any vein or lode claim, shall be paid for at
the rate of two dollars and fifty cents per acre, together with all
costs of proceedings; and where a vein or lode, such as is de-
scribed in section twenty-three hundred and twenty, is known
to exist within the boundaries of a placer claim, an application
for a patent for such placer claim which does not include an
application for the vein or lode claim shall be construed as a
conclusive declaration that the claimant of the placer claim
has no right of possession of the vein or lode claim; but where
the existence of a vein or lode in a placer claim is not known, a
patent for the placer claim shall convey all valuable mineral
and other deposits within the boundaries thereof."

It will be seen that section 2322 gives to the owner of a valid
lode location the exclusive right of possession and enjoyment
of all the surface included within the lines of the location.   That
exclusive right of possession forbids any trespass.   No one
without his consent, or at least his acquiescence, can rightfully
enter upon the premises or disturb its surface by sinking shafts
or otherwise.   It was the judgment of Congress that, in order
to secure the fullest working of the mines and the complete
development of the mineral property, the owner thereof should
have the undisturbed possession of not less than a specified
amount of surface.   That exclusive right of possession is as
much the property of the locator as the vein or lode by him
discovered and located.   In *Belk* v. *Meagher*, 104 U. S. 279,
283, it was said by Chief Justice Waite that "A mining claim
perfected under the law is property in the highest sense of that
term;" and in a later case, *Gwillim* v. *Donnellan*, 115 U. S. 45,
49, he adds:

"A valid and subsisting location of mineral lands, made and
kept up in accordance with the provisions of the statutes of the
United States, has the effect of a grant by the United States of
the right of present and exclusive possession of the lands lo-
cated.   If, when one enters on land to make a location there is

another location in full force, which entitles its owner to the exclusive possession of the land, the first location operates as a bar to the second."

In *St. Louis Mining Co. v. Montana Mining Co.*, 171 U. S. 650, 655, the present Chief Justice declared that "where there is a valid location of a mining claim, the area becomes segregated from the public domain and the property of the locator." Nor is this "exclusive right of possession and enjoyment" limited to the surface, nor even to the single vein whose discovery antedates and is the basis of the location. It extends (so reads the section) to "all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically." In other words, the entire body of ground, together with all veins and lodes whose apexes are within that body of ground, becomes subject to an exclusive right of possession and enjoyment by the locator. And this exclusive right of possession and enjoyment continues during the entire life of the location, or, in the words of Chief Justice Waite, just quoted, while there is "a valid and subsisting location of mineral lands, made and kept up in accordance with the provisions of the statutes of the United States." There is no provision for, no suggestion of a prior termination thereof.

By section 2329, placer claims are subject to entry and patent "under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims." The purpose of this section is apparently to place the location of placer claims on an equality both in procedure and rights with lode claims. If there were no other legislation in respect to placer claims the case before us would present little doubt, but following this are certain provisions, those having special bearing on the case before us being found in section 2333. Parties obtaining a patent for a lode claim must pay $5 an acre for the surface ground while for a placer claim the government only charges $2.50 an acre. By section 2333 it is provided that one who is in possession of a placer claim and also of a lode claim

included within the boundaries of the placer claim shall, on making application for a patent, disclose the fact of the lode claim within the boundaries of the placer, and upon the issue of the patent payment shall be made accordingly; that if the application for the placer claim does not include an application for a vein or lode claim known to exist within the boundaries of the placer it shall be construed as a conclusive declaration that the placer claimant has no right of possession of that vein or lode; and further, that where the existence of a vein or lode within the boundaries of a placer claim is not known the patent for the placer claim shall convey all valuable mineral and other deposits within its boundaries.

A mineral lode or vein may have its apex within the area of a tract whose surface is valuable for placer mining, and this last section is the provision which Congress has made for such a case. That a lode or vein, descending as it often does to great depths, may contain more mineral than can be obtained from the loose deposits which are secured by placer mining within the same limits of surface area, naturally gives to the surface area a higher value in the one case than the other, and that Congress appreciated this difference is shown by the different prices charged for the surface under the two conditions. Often the existence of a lode or vein is not disclosed by the placer deposits. Hence ground may be known to be valuable and be located for placer mining, and yet no one be aware that underneath the surface there is a lode or vein of greater value. A placer location is not a location of lodes or veins underneath the surface, but is simply a claim of a tract or parcel of ground for the sake of loose deposits of mineral upon or near the surface. A lode or vein may be known to exist at the time of the placer location or not known until long after a patent therefor has been issued. There being no necessary connection between the placer and the vein Congress by the section has provided that in an application for a placer patent the applicant shall include any vein or lode of which he has possession, and that if he does not make such inclusion the omission is to be taken

as a conclusive declaration that he has no right of possession of such vein or lode. If, however, no vein or lode within the placer claim is known to exist at the time the patent is issued, then the patentee takes title to any which may be subsequently discovered.

While by the statute the right of exclusive possession and enjoyment is given to a locator, whether his location be of a lode claim or a placer claim, yet the effect of a patent is different. The patent of a lode claim confirms the original location, with the right of exclusive possession, and conveys title to the tract covered by the location together with all veins, lodes and ledges which have their apexes therein, whereas the patent to the placer claim, while confirming the original location and conveying title to the placer ground, does not necessarily convey the title to all veins, lodes and ledges within its area. It makes no difference whether a vein or lode within the boundaries of a lode claim is known or unknown, for the locator is entitled to the exclusive possession and enjoyment of all the veins and lodes and the patent confirms his title to them. But a patent of a placer claim will not convey the title to a known vein or lode within its area unless that vein or lode is specifically applied and paid for.

It is contended that because a vein or lode may have its apex within the limits of a placer claim a stranger has a right to go upon the claim, and by sinking shafts or otherwise explore for any such lode or vein, and on finding one obtain a title thereto. That, with the consent of the owner of the placer claim, he may enter and make such exploration, and if successful, obtain title to the vein or lode, cannot be questioned. But can he do so against the will of the placer locator? If one may do it, others may, and so the whole surface of the placer be occupied by strangers seeking to discover veins beneath the surface. Of what value then would the placer be to the locator? Placer workings are surface workings, and if the placer locator cannot maintain possession of the surface he cannot continue his workings. And if the surface is open to the entry of whoever

seeks to explore for veins, his possession can be entirely destroyed. In this connection it may be well to notice the last sentence in section 2322. That section, from which we have just quoted, is the one which gives a locator the right to pursue a vein on its dip outside of the vertical side lines of his location. The sentence, which is a limitation on such right, reads: "And nothing in this section shall authorize the locator or possessor of a vein or lode which extends in its downward course beyond the vertical lines of his claim to enter upon the surface of a claim owned or possessed by another."

It would seem strange that one owning a vein and having a right in pursuing it to enter beneath the surface of another's location should be expressly forbidden to enter upon that surface if at the same time one owning no vein and having no rights beneath the surface is at liberty to enter upon that surface and prospect for veins as yet undiscovered.

We agree with the Supreme Court of Colorado as to the law when it says that "one may not go upon a prior valid placer location to prospect for unknown lodes and get title to lode claims thereafter discovered and located in this manner and within the placer boundaries, unless the placer owner has abandoned his claim, waives the trespass, or by his conduct is estopped to complain of it." Perhaps if the placer owner, with knowledge of what the prospectors are doing, takes no steps to restrain their work and certainly if he acquiesces in their action, he cannot after they have discovered a vein or lode assert right to it, for, generally, a vein belongs to him who has discovered it, and a locator permitting others to search within the limits of his placer ought not thereafter to appropriate that which they have discovered by such search.

The difficulty with the case presented by the plaintiff in error is, that under the findings of fact, we must take it that the entries of the locators of these several lode claims upon the placer grounds were trespasses, and as a general rule no one can initiate a right by means of a trespass. *Atherton* v. *Fowler,* 96 U. S. 513; *Trenouth* v. *San Francisco,* 100 U. S. 251; *Haws* v.

*Victoria Copper Mining Company,* 160 U. S. 303. See also *Cosmos Exploration Company* v. *Gray Eagle Company, supra,* in which the court said (p. 17):

"No right can be initiated on government land which is in the actual possession of another by a forcible, fraudulent or clandestine entry thereon. *Cowell* v. *Lammers,* (C. C.) 21 Fed. Rep. 200, 202; *Nevada Sierra Oil Co.* v. *Home Oil Co.,* (C. C.) 98 Fed. Rep. 674, 680; *Hosmer* v. *Wallace,* 97 U. S. 575, 579; *Trenouth* v. *San Francisco,* 100 U. S. 251; *Mower* v. *Fletcher,* 116 U. S. 380, 385, 386; *Haws* v. *Mining Company,* 160 U. S. 303, 317; *Nickals* v. *Winn,* 17 Nevada, 188, 193; *McBrown* v. *Morris,* 59 California, 64, 72; *Goodwin* v. *McCabe,* 75 California, 584, 588; *Rourke* v. *McNally,* 98 California, 291."

If a placer locator is, as we have shown, entitled to the exclusive possession of the surface, an entry thereon against his will, for the purpose of prospecting by sinking shafts or otherwise, is undoubtedly a trespass, and such a trespass cannot be relied upon to sustain a claim of a right to veins and lodes. It will not do to say that the right thus claimed is only a right to something which belongs to the United States and which will never belong to the placer locator, unless specifically applied and paid for by him, and therefore that he has no cause of complaint; for if the claim of the lode locator be sustained it carries under sections 2320 and 2333 at least twenty-five feet of the surface on each side of the middle of the vein. Further, if there be no prospecting, no vein or lode discovered until after patent, then the title to all veins and lodes within the area of the placer passes to the placer patentee and any subsequent discovery would enure to his benefit.

Again, it is contended that the claims which the defendant sought to patent were lode claims; that the only title set up in the complaint in the adverse suit was a placer title, and that a placer claimant has no standing to maintain an adverse suit against lode applications. In support of this is cited 2 Lindley on Mines, section 721, in which the author says:

"Where an application for a patent to a lode within the

limits of a placer is made by a lode claimant, if the placer
claimant asserts any right to the lode, he is necessarily called
upon to adverse. Where his claim, however, is placer, pure
and simple, under which claim he cannot lawfully assert a
right to the lode, he has nothing upon which to base an ad-
verse claim, unless the lode is entirely without the placer, and
the controversy is confined to a conflicting surface, or the lode
claimant seeks to acquire more surface than the law per-
mits."

We do not think the author's language is to be taken as
broadly as counsel contend. Under the statutes a lode claim
carries with it the right to a certain number of acres, and where
one is in peaceable possession of a valid placer claim, if a
stranger forcibly enters upon that claim, discovers and locates
a lode claim within its boundaries, and then applies for a patent,
surely the placer claimant has a right to be heard in defence of
his title to the ground of which he has been thus forcibly dis-
possessed. If the application for a patent of the lode claim is
not adversed it will pass to patent, and it may well be doubted
whether the placer claimant could, after the issue of a patent
under such circumstances, maintain an equitable suit to have
the patentee declared the holder of the legal title to the ground
for his benefit. If the placer claimant can be thus deprived
of his possession and title to a part of his ground he may be in
like manner dispossessed of all by virtue of many forcible tres-
passes and lode discoveries.

The amount of land embraced in this placer location was
about one hundred acres, while the land claimed under the
several lode locations was a little over thirty-five acres. Can
it be that the placer claimant had no right to be heard in court
respecting the claim of the lode claimants to so large a portion
of the placer ground?

We must not be understood to hold that, because of the
judgment in this adverse suit in favor of the placer claimants,
their right to a patent for the land is settled beyond the reach
of inquiry by the government, or that the judgment neces-

sarily gives to them the lodes in controversy. In 2 Lindley on Mines, sec. 765, the author thus states the law:

"Notwithstanding the judgment of the court on the question of the right of possession, it still remains for the Land Department to pass upon the sufficiency of the proofs, to ascertain the character of the land, and determine whether or no the conditions of the law have been complied with in good faith."

In 4 L. D. 316, Mr. Justice Lamar, then Secretary of the Interior, said in respect to this question:

"Does the judgment of a court as to which of two litigants has the better title to a piece of land bind the Commissioner to say, without judgment, or contrary to his judgment, that the successful litigant has complete title and is entitled to patent under the law? The usual result following a favorable judgment in a court under section 2326 of the Revised Statutes is, I doubt not, the issue of patent in due time, but in such case the final passing of title is not on the judgment of the court independent of that of the Commissioner, but is on the judgment of the latter pursuant to that of the former, and on certain evidence supplemental to that furnished by the judgment roll.

"The judgment of the court is, in the language of the law, 'to determine the question of the right of possession.' It does not go beyond that. When it has determined which of the parties litigant is entitled to possession, its office is ended, but title to patent is not yet established.

"The party thus placed in possession may 'file a certified copy of the judgment roll with the register and receiver.' But this is not all. He may file 'the certificate of the surveyor general that the requisite amount of labor has been performed or improvements made thereon.' Why file this, or anything further, if the judgment roll settles all questions as to title and right to patent? Clearly, because the law vests in the Commissioner the authority and makes it his duty to see that the requirements of law relative to entries and granting of patents thereunder shall have been complied with before the issue of

patent. His judgment should therefore be satisfied before he is called upon to take final action in any case. In this case, the judgment of the court ended the contest between the parties and determined the right of possession. The judgment roll proves the right of possession only. The applicant must still make the proof required by law to entitle him to patent. *Branagan* v. *Dulaney*, 2 L. D. 744. The sufficiency of that proof is a matter for the determination of the Land Department."

This opinion was cited as an authority by this court in *Perego* v. *Dodge*, 163 U. S. 160, 168. See also *Aurora Lode* v. *Bulger Hill & Nugget Gulch Placer*, 23 L. D. 95, 103. The land office may yet decide against the validity of the lode locations and deny all claims of the locators thereto. So also it may decide against the placer location and set it aside, and in that event all rights resting upon such location will fall with it.

Finally, we observe that the existence of placer rights and lode rights within the same area seems to have been contemplated by Congress, and yet full provision for the harmonious enforcement of both rights is not to be found in the statutes. We do not wonder at the comment made by Lindley, (1 Lindley, 2d ed. sec. 167,) that "the townsite laws, as they now exist, consist simply of a chronological arrangement of past legislation, an aggregation of fragments, a sort of 'crazy quilt,' in the sense that they lack harmonious blending. This may be said truthfully of the general body of the mining laws." Many regulations of the Land Department and decisions of courts find their warrant in an effort to so adjust various statutory provisions as to carry out what was believed to be the intent of Congress and at the same time secure justice to miners and those engaged in exploring for mines. If we assume that Congress, recognizing the co-existence of lode and placer rights within the same area, meant that a lode or vein might be secured by a party other than the owner of the placer location within which it is discovered—providing his discovery was made without forcible trespass and dispossession—it may be

that a court of equity is competent to provide by its decree that the discoverer of the lode, within the placer limits, shall be secured in the temporary possession of so much of the ground as will enable him to successfully work his lode, protecting at the same time the rights of the placer locator. But such equitable adjustment of co-existing rights cannot be secured in a simple adverse action and it would be, therefore, beyond the limits of proper inquiry in this case to determine the rights which may exist, if in the end the placer location be sustained and a discovery of the lodes without forcible trespass and dispossession established.

But for the present, for the reasons above given, we think the judgment of the Supreme Court of Colorado was right, and it is

*Affirmed.*

