### WEBB v. AMERICAN ASPHALTUM MINING CO.

(Circuit Court of Appeals, Eighth Circuit. November 16, 1907.)

#### No. 2,651.

1. MINES AND MINERALS—MINING CLAIMS—PUBLIC LANDS—ASPHALTUM IN VEINS LOCATABLE BY LODE CLAIMS, BUT NOT BY PLACER CLAIMS.

Asphaltum in lodes or veins in rock in place may be entered and patented by means of lode mining claims under section 2320, Rev. St. [U. S. Comp. St. 1901, p. 1424], and it may not be secured by means of placer claims under section 2329, nor under Act Feb. 11, 1897, c. 216, 29 Stat. 526 [U. S. Comp. St. 1901, p. 1434], regarding the entry of lands containing petroleum or other mineral oils.

2. SAME—LODE AND PLACER CLAIMS—DISTINGUISHING TEST, FORM OR CHARACTER OF DEPOSITS—WHETHER IN LODES OR NOT.

The distinguishing test which determines whether or not a valuable mineral deposit may be secured by a lode claim or by a placer claim is the form and character of the deposit. If it is in a vein or lode in rock in place, it may be secured by a lode claim, and it may not be by a placer claim. If it is not in a vein or lode in rock in place, it may be secured by a placer claim, and may not be by a lode claim.

3. SAME—CONSTRUCTION—"OTHER VALUABLE DEPOSITS" IN SECTION 2320, REVISED STATUTES, INCLUDES NONMETALLIFEROUS DEPOSITS.

The words "other valuable deposits" in the clause "mining claims upon veins or lodes of quartz, or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits" in section 2320, Rev. St. [U. S. Comp. St. 1901, p. 1424], includes nonmetalliferous, as well as metalliferous, deposits.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

J. M. Woy (A. L. Abrahams, on the brief), for plaintiff in error.

J. E. Robinson (Edward D. Upham, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. This action involves the title and the right of possession of a lode or vein of asphaltum of the kind commonly called "gilsonite," upon which the grantors of the plaintiff, Webb, located a placer claim, and the grantor of the defendant, the American Asphaltum Mining Company, subsequently located two lode mining claims. The defendant applied for a patent, the plaintiff filed an adverse claim, and brought this action to determine the title. The case was tried by the court upon an agreed statement of facts and some extraneous testimony, and the court found for the defendant. The latter's objection to the consideration of the question whether or not this finding is sustained by the evidence would be well founded, were it not for the fact that the agreed statement discloses all the material facts, and the evidence which was taken was immaterial. Hence the issue of law arises in this court whether or not the agreed facts sustained the judgment, and that issue is dependent upon the true answer to the single question: May the right to the possession and to the title to a vein or lode of asphaltum in rock in place be secured by the location of a placer claim upon the land in which it is found?

A vein or lode is mineral-bearing rock or other earthy matter in place in a fissure in rock, so that its boundaries are sharply defined by rocky walls in place. A lode location is the location of such a lode or vein in the manner prescribed by the acts of Congress. A placer location is the location in accordance with those acts of a tract of land for the mineral bearing or other valuable deposits upon or within it that are not found in lodes or veins in rock in place. It is a claim of a tract of land for the sake of loose deposits on or near its surface. Clipper Mining Company v. Eli Mining & Land Company, 194 U. S. 220, 228, 24 Sup. Ct. 632, 48 L. Ed. 944. The plaintiff in this case has made no claim of right or title under section 2333 of the Revised Statutes [U. S. Comp. St. 1901, p. 1433], and the statements and discussion herein have no relevancy to such a claim or to the proper construction of that section. By section 2319 of the Revised Statutes all valuable mineral deposits in lands belonging to the United States are declared to be free and open to exploration and purchase. By the second section of the act of July 26, 1866 (14 Stat. c. 262), the location and acquisition by means of a lode mining claim of any "vein or lode of quartz, or other rock in place bearing gold, silver, cinnabar, or copper" were authorized. By Act July 9, 1870, c. 235, 16 Stat. 217, Rev. St. § 2329, the act of 1866 was amended by adding section 12, which provided "that claims, usually called 'placers' including all forms of deposit, excepting veins of quartz or other rock in place" might be entered and patented. By the act of May 10, 1872, section

2 of the act of 1866 was repealed and authority was granted to qualified citizens to locate and acquire by means of lode mining claims "veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper or other valuable deposits." Act May 10, 1872, c. 152, §§ 2, 9, 17 Stat. 91, 94, Rev. St. § 2320.

The asphaltum here in controversy is a solid valuable mineral deposit commonly called "gilsonite," which is found in a vein or lode in rock in place. But counsel for the plaintiff insist that it is not subject to location as a lode because it is not a metalliferous deposit. They say that while it falls within the literal meaning of the words "other valuable deposits" in section 2320, those words should be interpreted by the rules noscitur a sociis and ejusdem generis, and that, as all the deposits specified in that section bear metal, the intention of Congress must be presumed to have been to restrict the meaning of that term to deposits of the same kind. The rules that, where general words follow specific words, the former are presumed to treat of things of the same character as the latter, and that words and terms should receive the interpretation which the same or similar terms must have in the same or like relations, are persuasive, and the argument founded upon them might have proved convincing if other considerations could have been ignored. But the term "other valuable deposits" occurs in a general statute enacted to provide a comprehensive and complete system for the disposition of the mineral deposits in the lands of the United States. Separate sections or clauses of this general legislation may not be lawfully segregated from the body of the statutes upon this subject and interpreted without reference to the purpose and general effect of the other laws relating thereto, but all the parts of this legislation must be considered and construed together, to the end that, if possible, it may become and be a uniform and practical system of regulation and of action.

Section 2318 provides that all "lands valuable for minerals" shall be reserved from sale, except as otherwise expressly directed. Section 2319 declares that "all mineral deposits in lands" belonging to the United States shall be open to exploration and purchase. Section 2320 specifies the method by which "veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper or other valuable deposits" may be secured, and section 2329 provides that "claims for placers including all forms of deposit, excepting veins of quartz or other rock in place may be entered and patented." The "mineral deposits" treated in this legislation include nonmetalliferous deposits, alum, asphaltum, borax, guano, diamonds, gypsum, resin, marble, mica, slate, amber, petroleum, limestone, and building stone, as well as deposits bearing gold, silver, and other metals, and the term "lands valuable for minerals" in the law means all lands chiefly valuable for any of these mineral deposits rather than for agricultural purposes. Northern Pacific Ry. Co. v. Soderberg, 188 U. S. 526, 534–537, 23 Sup. Ct. 365, 47 L. Ed. 575; Pacific Coast Marble Co. v. Northern Pacific R. R. Co., 25 Land Dec. Dep. Int. 233, 240. Thus it clearly appears that the plan of this legislation was to provide two general methods of purchasing mineral deposits from the United States

—one by lode mining claims where the valuable deposits sought were in lodes or veins in rock in place, and the other by placer mining claims where the deposits were not in veins or lodes in rock in place, but were loose, scattered, or disseminated upon or under the surface of the land. The test which Congress provided by this legislation to be applied to determine how these deposits should be secured was the form and character of the deposits. If they are in veins or lodes in rock in place, they may be located and purchased under this legislation by means of lode mining claims; if they are not in fissures in rock in place but are loose or scattered on or through the land they may be located and bought by the use of placer mining claims. Reynolds v. Iron Silver Mining Co., 116 U. S. 687, 695, 6 Sup. Ct. 601, 29 L. Ed. 774; Clipper Mining Co. v. Eli Mining & Land Co., 194 U. S. 220, 228, 24 Sup. Ct. 632, 48 L. Ed. 944.

The maxims, noscitur a sociis and ejusdem generis, are but aids to discover the true intention of the legislative body, not arbitrary rules to be used to thwart its purpose, and they may not be permitted to prevail where the words of the statute and the entire act in which they appear, or the entire body of legislation which constitutes the legislative scheme upon the subject, clearly show that the application of these rules would have the latter effect. The words "other valuable deposits," in section 2320, taken in their common signification, include gilsonite and the other solid forms of asphaltum, for these are valuable mineral deposits; the body of legislation, of which section 2320 and this term are a part, treats of nonmetalliferous as well as metalliferous deposits, and gilsonite or hard asphaltum in a vein or lode in rock in place is one of the valuable deposits upon which a lode mining claim may be lawfully located under this section.

In 1897, however, Congress enacted "that any person authorized to enter lands under the mining laws of the United States may enter and obtain patent to lands containing petroleum or other mineral oils, and chiefly valuable therefor, under the provisions of the laws relating to placer mineral claims" (Act Feb. 11, 1897, c. 216, 29 Stat. 526 [U. S. Comp. St. 1901, p. 1434]); and counsel for the plaintiff contend that gilsonite and the other forms of asphaltum are mineral oils and may be purchased from the government under this statute by locating placer claims upon the land in which they are found. Asphaltum varies in its consistency from a liquid or semiliquid to a hard or solid condition. The deposit here under consideration is gilsonite, and it is neither a liquid nor a semiliquid, but a hard solid substance. Conceding that this and other solid forms of asphaltum may fall within the scientific and the true significance of the term mineral oils used in this act of 1897, they would not in our opinion fall within the meaning which that term would convey to the mind of a citizen of ordinary intelligence. To such a man the words convey a description of a fluid, and not of a solid substance. The act of 1897 was not enacted for scientists or for those specially learned in the composition and analysis of geological formations alone or chiefly, but for citizens of common intelligence and learning who might

desire to buy valuable deposits upon the lands of the United States and to them the significance of these words "other mineral oils" in this law, following, as they do, the word "petroleum," which describes a liquid, is liquid or semiliquid mineral oils, and it does not include gilsonite or the hard forms of asphaltum. The sense in which the reader of ordinary knowledge and intelligence would take these words, the obvious common meaning of them, should be preferred to the recondite signification which would include the solid forms of asphaltum, and for this reason the act of 1897 did not authorize the entry of lands which contain these deposits by means of placer claims.

Again, a deposit of asphaltum in a lode or vein in rock in place was locatable, as we have seen, by means of a lode mining claim, and it was not subject to location by a placer claim under the acts of 1866 and 1872, when the act of February 11, 1897, was passed. Prior to August 27, 1896, the officers of the land department had held that lands valuable for petroleum might be entered and patented by means of placer claims (In re Rogers, 4 Land Dec. Dep. Int. 284; In re Piru Oil Company, 16 Land Dec. 117; Gird v. California Oil Company [C. C.] 60 Fed. 531), but on that day the Secretary of the Interior decided that they could not be thus located. Union Oil Company, 23 Land Dec. Dep. Int. 222. The nature of the act of 1897 and the fact that it was passed at the next session of Congress after this decision strongly indicate that it was not the intention of that body to change thereby the prescribed method for the entry of veins of asphaltum in rock in place, but that its only purpose and the only effect of the act were to restore the rule and practice regarding petroleum and other mineral oils which were not found in veins or lodes which had prevailed before the decision in the Union Oil Company Case, so as to authorize the entry of lands which contain them by placer claims.

Our conclusion is that gilsonite and the harder forms of asphaltum in veins or lodes in rock in place may be entered and patented by means of the location of lode mining claims thereon, and that they may not be secured by means of placer claims upon the land in which they are found.

This was the judgment of the court below; and it is affirmed.