**AMERICAN COLLOID COMPANY, Plaintiff,**

v.

**Donald HODEL, Secretary of Interior, and Scott Burnham, an individual, Defendants.**

No. C88–224–K.

United States District Court, D. Wyoming.

Dec. 22, 1988.

R. Dennis Ickes, Nielsen and Senior, Salt Lake City, Utah, and Paul B. Godfrey, Godfrey, Sundahl and Jorgenson, Cheyenne, Wyo., for plaintiff.

Carol A. Statkus, Asst. U.S. Atty. for the District of Wyoming, Cheyenne, Wyo., for defendant Hodel.

William N. Heiss, Casper, Wyo., for defendant Burnham.

### ORDER GRANTING DEFENDANT BURNHAM'S MOTION TO DISMISS (WITH FINDINGS)

KERR, District Judge.

The above-entitled matter having come on regularly for hearing before the Court on defendant Burnham's motion to dismiss; plaintiff appearing by and through its attorneys, R. Dennis Ickes and Paul B. Godfrey; defendant Hodel appearing by and through his attorney, Carol A. Statkus, Assistant United States Attorney for the District of Wyoming; defendant Burnham appearing by and through his attorney, William N. Heiss; and the Court having heard the arguments of counsel, and having fully and carefully reviewed and considered the motion and briefs filed therewith, and all matters pertinent thereto, and being fully advised in the premises, FINDS:

Plaintiff brings this action seeking that the Court declare certain mining claims void and thereby vacate a decision of the Interior Board of Land Appeals (IBLA). In its complaint, plaintiff recites a host of statutory bases which it maintains give this Court jurisdiction to retain the case; most notably, the diversity of citizenship statute, 28 U.S.C. § 1332, the federal question statute, 28 U.S.C. § 1331, the administrative mandamus statute, 28 U.S.C. § 1361, the declaratory judgments statute, 28 U.S.C. § 2201, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706. For reasons which will be apparent, plaintiff's reasoning is flawed and the matter comes before the Court prematurely.

The present litigation represents the latest chapter to flow from the Bureau of Land Management's (BLM) decision to reopen almost 2,400 acres of land in Big Horn County, Wyoming to location under federal mining laws on October 10, 1981 at 10 a.m. Plaintiff American Colloid Company is a Delaware corporation which operates a bentonite manufacturing plant in Big Horn County, northeast of Lovell, Wyoming. As soon as the land was opened for location, American Colloid and other locators were on hand aggressively staking claims in a scene reminiscent of the Oklahoma Rush. Apparently, American Colloid staked some 92 mining claims. Not surprisingly, the flurry of activity created an air of confusion which spawned litigation as locators hurriedly marked the boundaries of their respective claims. In a series of consolidated cases conveniently captioned *American Colloid Company v. Carl E. Fischer*, No. C82–0074, Judge Brimmer of this Court, on September 9, 1983 entered judgment quieting title to certain placer mining claims known as the SHO claims in American Colloid and against all others. Subsequently, American Colloid filed a patent application with the Wyoming State Office of the BLM for the SHO claims. According to plaintiff, defendant Burnham, who was not a named

party in the previous litigation but who plaintiff characterized as "an associate and agent of the prior litigants," located mining claims he called the Foxx 1–18 claims directly over plaintiff's SHO claims.

In early 1984, Burnham filed a protest with the BLM asserting that American Colloid had not complied with all the legal requirements for obtaining a patent. *See generally* 43 C.F.R. § 3872.1 (1987). The BLM found Burnham's claims to be without legal effect and declared them null and void *ab initio*, thus dismissing the protest. Thereafter, Burnham appealed the dismissal to the IBLA. Following careful consideration, a panel of three administrative law judges (ALJs) concluded that the BLM's action was inappropriate under the circumstances and accordingly reversed the dismissal and remanded the matter to the BLM for factual findings regarding American Colloid's location activities on the subject land prior to the revocation of the land's withdrawal from the operation of the public land laws.

Before the BLM had an opportunity to act on the remand, American Colloid instituted the present action asking this Court, *inter alia*, to invalidate Burnham's claims to the extent they conflict with its claims, to enjoin Burnham from bringing future protests against the validity of American Colloid's SHO claims, and to vacate the IBLA decision and thereby affirm the BLM's dismissal of Burnham's protest. In response, Burnham filed a motion to dismiss, questioning this Court's jurisdiction to proceed in light of his contention that a ripeness problem exists due to the absence of final agency action. It appears that resolution of this jurisdictional quagmire necessitates a review of the proceedings before Judge Brimmer; for, American Colloid attempts to overcome the APA's requirement of final agency action by arguing that the issues now being raised, namely prestaking and adoption, were disposed of in Judge Brimmer's case and are therefore *res judicata*, abrogating the necessity of going back to the BLM. Essentially, plaintiff's argument is that this Court's review would not be enhanced by a new BLM decision on remand, an alternative American Colloid views as a delay tactic designed to prevent the inevitable.

■ As a starting point, this Court begins with the fundamental premise that a court has jurisdiction to determine whether it has jurisdiction to render a decision on the merits. *See Land v. Dollar*, 330 U.S. 731, 739, 67 S.Ct. 1009, 1013, 91 L.Ed. 1209 (1947). The ability to undertake this threshold jurisdictional inquiry is not defeated by a subsequent finding that a court indeed is jurisdictionally powerless to proceed. However, absent jurisdiction, the court must reject the litigation. *King v. Woodward*, 464 F.2d 625, 628 (10th Cir. 1972). Although this is not an instance where the question of jurisdiction turns upon a decision on the merits, *see Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir.1965), the posture of this case necessitates a look at the previous decision of this Court which American Colloid relies upon for its proposition that this Court indeed has jurisdiction to decide this matter notwithstanding the status of administrative proceedings.

In opposition to Burnham's motion to dismiss, American Colloid, relying on Burnham's deposition testimony in the *Fischer* litigation, advances the argument that since Burnham was at that time a field supervisor for a company which, in turn, was a member of the defendant Carl Fischer Association, and since Burnham himself had been one of the locators present when the land was reopened for mining in 1981, he had every opportunity before Judge Brimmer to voice his protests concerning the validity of American Colloid's claims but failed to do so and under *res judicata* is barred from relitigating the same issues before the administrative agency. The fallacy with this line of reasoning stems from an improper reliance upon principles of collateral estoppel and *res judicata*.

■ *Res judicata* and collateral estoppel, or "claim preclusion" and "issue preclusion" as they are modernly termed, refer to alternative ways that a judgment in a prior action precludes a future action. The former is broken down into two concepts, merger and bar, the sole distinction

being that merger prevents a prevailing party from relitigating the same cause of action regardless of whether new grounds exist while bar prevents a losing party from doing so. J. Friedenthal, M. Kane & A. Miller, Civil Procedure § 14.1 (1985). Thus, from a policy standpoint, *res judicata* "encourages reliance on judical decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). *Res judicata* ends litigation not only as to claims litigated but, in a strict sense, also as to those which might have been litigated relative to the demand. *See Cromwell v. County of Sac*, 94 U.S. (4 Otto) 351, 353, 24 L.Ed. 195 (1876). Where a subsequent action is based upon a different claim, further litigation is barred only to the extent of matters conclusively decided in the prior action. As *Cromwell* counsels, "the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined." *Id.*

■ Before a judgment can be invoked in subsequent litigation based upon *res judicata*, three prerequisites must be present; the judgment must be (1) valid; (2) final; and (3) on the merits. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4427 (1981). *See also* J. Friedenthal, M. Kane & A. Miller, Civil Procedure § 14.7 (1985). When the previous action was brought before Judge Brimmer in 1982, American Colloid sought to have title to certain claims on the reopened lands quieted in its favor to prevent the various defendants from asserting conflicting claims. *See* American Colloid complaint in *Fischer*. On July 12, 1983, the same day that the nonjury trial began, a settlement agreement was filed with the Court. Under the terms of the agreement, all the defendants agreed that American Colloid retained all interest in the SHO claims and other claims outlined therein.

All agreed to mutually confess judgment and quitclaim or abandon their interests accordingly. With the settlement agreement finalized, Judge Brimmer entered a Final Order of Dismissal With Prejudice, Decree and Judgment, essentially giving American Colloid lawful and exclusive possession of the SHO claims and of all valuable and locatable minerals contained therein. The order also provided that all parties waived their right to appeal any decision or order in the case.

■ While out-of-court settlements may pose problems for courts from the standpoint of the applicability of *res judicata*, the same is not true with consent judgments. Absent indications to the contrary by the parties, a consent judgment will be given full *res judicata* effect *as to the subject matter of the action. See generally United States v. Southern Ute Tribe or Band of Indians*, 402 U.S. 159, 91 S.Ct. 1336, 28 L.Ed.2d 695 (1971). A review of the settlement agreement and subsequent order of the Court conclusively shows that full preclusive effect attaches to the judgment and that indeed it is a valid and final judgment on the merits.[1]

The inquiry must now turn to the nature of the proceeding initiated by Burnham before the BLM shortly after *Fischer* ended. Burnham brought a protest action February 16, 1984, questioning American Colloid's entitlement to a patent. That protest was subsequently dismissed by BLM following a declaration that Burnham's Foxx claims were null and void *ab initio* because the land in question was segregated from entry. On appeal to the IBLA, ALJ Arness, in a lengthy decision, disagreed and remanded the matter to the BLM for factual findings.

■ Whether American Colloid is correct on its preclusion argument requires an understanding of what a protest is and how it differs from its two basic counterparts—

---

1. Although "on the merits" creates some confusion where a matter has been disposed of without a trial, *see generally* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4435 (1981), there is no confusion where, as in *Fischer*, the disposition was based upon the validity of plaintiff's claim rather than upon a technical procedural ground and came in the form of a blanket consent judgment, culminating in a dismissal with prejudice by agreement of the parties.

the adverse proceeding and the contest. By statute, anyone with a claim adverse to that of the patent applicant must file it within the sixty-day period of publication of notice of the application or be forever barred. 30 U.S.C. § 29 (1982). Such an action is known as an adverse proceeding and can only be brought by a locator of a conflicting mining claim whose claim might be lost if the applicant is successful in securing a patent. *See* 2 American Law of Mining § 52.01 (2d ed.1984). Not only must an adverse claimant file with the BLM but he must also commence an adverse suit in a court of competent jurisdiction within thirty days of filing an adverse claim because the BLM has no statutory authority to determine the validity of title or right of possession. 30 U.S.C. § 30. An adverse claim automatically stays all proceedings on the patent application until the matter has been resolved in court or the claim waived. *Id.*

 In contrast to the adverse proceeding are the contest and the protest proceeding. A contest is a proceeding within the BLM brought by a private party or government agency challenging the validity of an unpatented mining location due to noncompliance with location requirements. 2 American Law of Mining § 52.01. However, any person who does not meet the criteria for bringing a contest may *at any time prior to issuance of a patent* bring a protest, contending that somehow a patent applicant has not complied with some essential requirement for a patent. *Id.* at § 53.02. *See also* 43 C.F.R. § 3872.1. With a protest, the inquiry shifts from a decision as to who has the better right to a determination of whether an applicant complied with the law. Thus, a protest may not be filed to preserve an adverse claim which was not initiated within the sixty-day period.

 ALJ Arness reproduced the grounds for Burnham's protest:

(1) The testimony of Myron Durtsche, Jr., as to the manner of the location of the Sho No. 4 as contained in a deposition submitted with the protest;

(2) the statement in BLM Instruction Memorandum ... No. 83–241 that '[a]ppropriations of lands under the gen-

eral mining laws prior to the date and time of restoration is unauthorized'; and

(3) legal briefs submitted with the protest, addressing 'the adoption issue,' which 'were written in regard to another lawsuit, but the same issue applies.'

*Scott Burnham,* 100 IBLA 94, 99 (December 2, 1987).

American Colloid cannot be heard to raise some sort of agency relationship between Burnham and one of the *Fischer* defendants. The fact remains that Burnham was not a party in the *Fischer* proceedings; he was a witness. The law is not such that a nonparty can be swept into a group properly precluded by *res judicata* or collateral estoppel from relitigating a matter in the future.

 Even if *res judicata* were applicable to Burnham's protest, American Colloid's position would remain infirm. This by no means undercuts the conclusiveness of the *Fischer* decision *as it applies to possessory rights.* Rather, it represents a recognition that narrow exceptions to the mechanical application of *res judicata* exist even at the expense of notions of finality and judicial economy. For example, *res judicata* cannot be invoked where to do so would contravene congressional intent. *See* J. Friedenthal, M. Kane & A. Miller, Civil Procedure § 14.8 (1985).

 In reviewing the pertinent statutes, it is unmistakably clear that Congress entrusted the decision of entitlement to a mineral patent with the Department of Interior in the first instance, not the courts:

*The Secretary of the Interior or such officer as he may designate shall perform all executive duties* appertaining to the surveying and sale of the public lands of the United States, or in anywise respecting such public lands, and, also, such *as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the Government.*

43 U.S.C. § 2 (emphasis added). The fact that initiation of an adverse suit in court stays "all proceedings except the publication of notice and making and filing of the

affidavit thereof ..." strongly corroborates the conclusion that once the issue of possession is resolved, proceedings for a patent would resume. 30 U.S.C. § 30.

Much more is involved in the decision to award a patent than resolution of any possession controversy. As has been said:

> The issuance of a mineral patent is an adjudication of the validity of the claim, and conclusively establishes: (1) the mineral character of the land, (2) the citizenship of the applicant, and (3) the performance of every step necessary to the existence of a valid location, including discovery and performance of the required development work.

2 American Law of Mining § 54.05[2], at 15–16 (footnotes omitted).

■■■■■ Once *Fischer* ended pursuant to several settlement agreements followed by a corresponding judgment, the issue that was finally resolved and to which *res judicata* applies is possession. For almost a century the law has remained that a judgment which resolves the question of respective rights to possession leaves to the patent applicant the further burden of demonstrating his entitlement to a patent. *Clipper Mining Co. v. Eli Mining and Land Co.*, 194 U.S. 220, 234, 24 S.Ct. 632, 637, 48 L.Ed. 944 (1904). American Colloid does not present a forceful and reasoned justification which would compel the disregard of such weighty authority. A protest questioning American Colloid's right to a patent has been initiated at the administrative level. The decision of the IBLA is in keeping with *Clipper Mining*. The ALJ correctly recognized that *Fischer* involved a claim with issues unrelated to those raised by the protest. *Burnham*, 100 IBLA at 132–134.

American Colloid wholly mischaracterizes the nature of the IBLA decision in its complaint when it says that the remand was "with instruction to disregard this Court's prior decision and judgment in the *Fischer* litigation, to make a new decision and to reinstate Defendant Burnham's claims as valid legal interests." On the contrary, the remand instructions speak for themselves:

> [O]n remand BLM is to ascertain the facts as to American Colloid's activities on the land prior to the revocation of the withdrawal as they pertain to the company's location of its mining claims. Thereafter, BLM shall issue a new decision on the protest filed by Scott Burnham disposing of all factual and legal questions raised thereby. If a genuine dispute as to the facts should arise, the agency may deem it necessary to hold an informal hearing to resolve such dispute....

*Burnham*, 100 IBLA at 137–138.

In his thorough and well-reasoned opinion, ALJ Arness recognized the problems inherent with the position advanced by American Colloid:

> [I]t is undisputably the law that a valid mining claim segregates the area it encompasses from the acquisition of competing rights. To attribute the same effect to a patent application would permit an *invalid* location to have the same effect as a valid location. By staking and recording mining claims and then filing an application for patent, a locator could tie up large portions of the public domain without the necessity of making a discovery or even diligently searching for one. A valid location does not need a rule giving segregative effect to a patent application to defeat rival locations and an invalid claim does not deserve such protection.

*Id.* at 108–109 (emphasis in original).

American Colloid's interest in fostering judicial economy, while commendable, has no place where the price exacted is frustration of congressional objectives. Courts are empowered to leave threshold decisions to agencies charged with the primary responsibility of administering the particular activity involved. *See Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 68, 91 S.Ct. 203, 208, 27 L.Ed.2d 203 (1970). Congress has clearly expressed its intention that the Department of Interior be vested with primary jurisdiction to resolve applications for mineral patents. Deferring to the Department of Interior rather than taking the simpler and more convenient expedient

suggested by plaintiff represents a recognition that "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). Only after the Secretary of Interior has had an opportunity to render his decision on the patent application would jurisdiction be proper in this Court. As it stands, there is no final agency action which is reviewable under the APA.

NOW, THEREFORE, IT IS ORDERED that defendant Burnham's motion to dismiss be, and the same is, hereby granted; it is

FURTHER ORDERED that the above-entitled action be, and hereby is, dismissed without prejudice for want of jurisdiction; it is

FURTHER ORDERED that the matter be, and hereby is, remanded to the BLM for further proceedings in conformity with the decision of the IBLA.