# WOLVERTON *v.* NICHOLS.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF MONTANA.

Argued November 30, 1886. — Decided December 20, 1886.

A having applied for a patent for a placer mine in Montana, B filed an adverse claim in the register's office under the provisions of Rev. Stat. § 2325, and commenced suit for the settlement of the controversy in the District Court of the Territory according to the provisions of Rev. Stat. § 2326. In the course of the trial, it appeared that, before the commencement of the suit, B had agreed with C, by a sufficient instrument under seal, to convey the premises in dispute to C "by good and sufficient deed of conveyance duly acknowledged," and that C was in possession when the suit was begun and still remained in possession. The Code of Montana provides that "an action may be brought by any person in possession, by himself or his tenant of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate, or interest." The court ordered a nonsuit, which judgment was affirmed by the Supreme Court of the Territory. This court reverses the judgment of the Supreme Court, and holds that as C was holding under B, and as B was bound to C to have the title quieted, B had a right to have the verdict of the jury on the questions of fact at issue so as to settle the question which the Act of Congress required to be settled.

This was a suit instituted under the provisions of §§ 2325, 2326, Rev. Stat. to determine adverse claims to mineral lands. The case is stated in the opinion of the court.

*Mr. Edward O. Wolcott* for plaintiffs in error, submitted on his brief.

*Mr. William Herbert Smith* and *Mr. Walter H. Smith* (*Mr. F. C. Ford* was with them on the brief) for defendants in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Supreme Court of the Territory of Montana. The suit was brought in the District Court of that Territory to settle the controverted right to a patent from

the United States for a placer mine, under §§ 2325 and 2326 of the Revised Statutes of the United States. It is therein enacted that a person who has located and set up a claim for mineral lands, and who desires to get a patent for it, shall file in the proper land office an application for such patent, showing a compliance with the laws on that subject, and a plat and field-notes of the claim, and shall post a copy of such plat, with a notice of the application for the patent, in a conspicuous place on the land, for sixty days. If no adverse claim for the same is filed with the register within sixty days from this publication, and if the papers are otherwise in proper form, the patent shall issue; but where an adverse claim is filed during the period of publication, it shall be upon oath of the person making the same, showing the nature, boundaries, and extent of his claim, and "it shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment."

In the case before us the defendants, Nichols and Fuller, having made their application for a patent for a placer mine, the plaintiffs in error, the widow and heirs of Nelson Wolverton, filed the requisite claim in the register's office, adverse to that of Nichols and Fuller, in due time, and afterwards, in compliance with the act of Congress, instituted the present suit in the District Court of Montana to determine the right of possession. Upon the trial of this case before a jury, the plaintiff made what appears to be satisfactory proof that Nelson Wolverton had in his lifetime taken the necessary steps to establish his claim to the mine, or to that part of it now in contest, and had been dead about two years when these proceedings were commenced. In the course of the production of the plaintiffs' evidence it was developed by cross-examination that Mrs. Wolverton, acting for herself and as guardian of the two children of her deceased husband, had executed and delivered the following instrument:

"Know all men by these presents, that I, Margaret J. Wolverton, widow of Nelson Wolverton, deceased, for myself, and

as guardian for Eva Jane Wolverton and William Arthur Wolverton, infants under the age of twenty-one years, for and in consideration of the sum of one dollar to me in hand paid by the Colorado and Montana Smelting Company, and the farther consideration of said company prosecuting to a successful conclusion the cause of J. R. Clark, administrator of the estate of Nelson Wolverton, deceased, et al. *v.* Silas F. King, now pending in the District Court in and for Silver Bow County, have covenanted and agreed, and by these presents do covenant and agree, to convey, by a good and sufficient deed of conveyance, duly acknowledged, all that certain land bounded and described as follows: Beginning at a point on the easterly extremity of certain placer mining claims belonging to the estate of the said Nelson Wolverton, and located in Independence Mining District, Silver Bow County, Territory of Montana, in Township No. 3 North, Range No. 8 West of the principal meridian, which said point is due east from the most southerly point of a certain fence running westerly therefrom along the general course of said Silver Bow Creek; thence in a due west line from said point, touching the most southerly point of said fence, a distance of about thirteen hundred feet, to a point on the westerly extremity of placer mining claim number two hundred and thirty; thence from said point due south along the westerly boundary of said last-named placer claim to the most southerly boundary thereof; thence along the most southerly boundary of said placer mining claim, and placer mining claims numbers 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, and 242, in an easterly direction, to the southeast corner of said placer mining claim number two hundred and forty-two; thence in a northerly direction from said corner to the point or place of beginning; it being intended to convey all that part of said placer mining claims numbered from two hundred and thirty to two hundred and forty-two, both inclusive, which lies south of the most southerly point of the fence first above mentioned: To have and to hold the same unto the said The Colorado and Montana Smelting Company, their successors and assigns, for their own benefit and behoof forever.

" In witness whereof I have hereunto placed my hand and seal this 12th day of May, eighteen hundred and eighty-one.

        " MARGARET J. WOLVERTON. [SEAL.]
        " MARGARET J. WOLVERTON, [SEAL.]

  "*As guardian for Eva Jane Wolverton and William Arthur Wolverton.*

  " In presence of CALEB E. IRVINE."

    It was proved that the Colorado and Montana Smelting Company, who had held this property for two years under a lease, or as tenants of the Wolvertons, were now in the actual control and possession of the property mentioned in this instrument. An attempt was also made to show that they had performed the condition mentioned in it, and were entitled to the conveyance which that instrument provided should be made when this was done. Thereupon, at the suggestion of defendant's counsel, the court ordered a nonsuit. This judgment was affirmed in the Supreme Court of the Territory, and is the subject of consideration here.

    The ground upon which this nonsuit was ordered is that the plaintiffs were not in the actual possession of the property at the time of the trial, and that under the Statute of Montana, § 354 of the Code of Civil Procedure, this was an absolute necessity to the successful prosecution of this action. That section is in the following words:

  " An action may be brought by any person in possession, by himself or his tenant, of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate, or interest."

    But whatever may be the effect of that statute in an ordinary action which has no direct relation to the proceedings under the act of Congress which we have referred to, we are of opinion that, as applicable to such a case, the construction given by the court is entirely too restricted. The proceedings in this case commenced by the assertion of the defendants' claim to have a patent issue to them for the land in controversy. The next step was the filing of an adverse claim by

the plaintiffs in the land office, and the present suit is but a continuation of those proceedings, prescribed by the laws of the United States, to have a determination of the question as to which of the contesting parties is entitled to the patent. The act of Congress requires that the certified copy of the judgment of the court shall be filed in the land office and shall be there conclusive. And we must keep this main purpose of the action in view in any decision made with regard to the rights of the parties.

It appears from the evidence that at the time these proceedings took place in the land office the smelting company was in possession as the tenant of the Wolvertons, and that the contract by which Mrs. Wolverton undertook, upon certain conditions, to convey all the right of the Wolverton heirs to the smelting company, was made after the commencement of those proceedings. It might very well be maintained that, having thus commenced such proceedings, at a time when the possession was in the Wolvertons, they could be conducted to a termination in their name. But, however that may be, it is quite clear, upon the testimony before us, that Mrs. Wolverton had not completely parted with her interest and that of her children in the land in controversy at the time of the trial. The language of the instrument, by which this is supposed to have been done, is that she will thereafter convey the lands described. This conveyance has never been made. The whole thing rests in promise or covenant to do it in the future. This covenant also is that it shall be done by a good and sufficient deed of conveyance. These words have always been held to mean a conveyance of a good title, and though in point of fact the legal title was in the United States, as it is yet, still the parties understood very well that they were dealing with regard to a class of claims which the United States, by statute and otherwise, had always recognized, and the meaning of the covenant was that she should convey such an interest in the property as would enable the other parties, if they chose, to obtain the patent from the government. She, therefore, was interested to defeat the claim of the defendants, who were seeking to get that patent; it was her duty and her interest to

contest their claim and have the right to the patent decided in favor of the claims which she set up as being derived from her late husband. This was necessary to enable her to make that "good and sufficient conveyance" which this covenant required, and which had never been made, and if she had stood by and permitted the defendants to obtain the patent from the United States she would have been unable to comply with her contract to convey a good and sufficient title to the smelting company. In fact, so far as regards the right of possession, which alone is in controversy in this suit, the interest, the claim, and the rights of the plaintiffs, the Wolvertons, and of the smelting company, are in privity with each other and are identical. And, inasmuch as this is a contest provided for by the statutes of the United States, in order that the officers of the land department may be informed which of the two contestants before it is entitled to the patent, we see no reason why the plaintiffs here should not have been permitted to have the verdict of a jury on that question in this suit. And, since such possession as the smelting company had was a part of and in subordination to the title of the Wolvertons, the judgment in this case between the parties to this suit would have settled the question which the act of Congress required to be settled. We are of opinion, therefore, that, so far as regards this, the main ground on which the court below directed a nonsuit, that court erred.

Something is said in the brief about the fact that the plaintiffs have failed to show that the possession of these parties conflicted. On that point it is sufficient to say that the plaintiffs, in their petition, asserted a claim to the southeast quarter of the southeast quarter of section 23, in Township 3 North, Range 8 West of the principal meridian of Montana, and that the defendants, in their answer, admit that they have applied for a patent for the same land exactly. If they did not desire to have the question of the right of possession to any part of these forty acres submitted to a jury on the ground that they did not claim it, they should have made a disclaimer. Apart from this, so far as relates to the evidence on the subject, we are of opinion that there was sufficient to go to the jury to

show that the plaintiffs' claim did include a part of that claimed by the defendants in this action.

*For these reasons the judgment of the Supreme Court is reversed, and the case remanded for further proceedings.*