DUFFIELD et al. v. SAN FRANCISCO CHEMICAL CO.

(District Court, D. Idaho, S. D.    September 3, 1912.)

No. 142.

1. MINES AND MINERALS (§ 38*)—ADVERSE CLAIM—SCOPE OF INQUIRY—CHARACTER OF GROUND.

A suit in support of an adverse claim to a mining location authorized by Rev. St. § '2326 (U. S. Comp. St. 1901, p. 1430), is purely possessory in character without reference to the form of action adopted, in which the issue to be tried is which of the contesting claimants is prior in right to the present possession, the court being without jurisdiction to review the determination of the Land Department as to whether the character of the deposit is lode or placer; such determination being final and conclusive on all the departments of the government, including the courts.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–113; Dec. Dig. § 38.*]

2. MINES AND MINERALS (§ 27*)—MINING LOCATION—ADVERSE CLAIM—TRESPASS—POSSESSION.

Defendant having acquired a prior right to the possession of a mining claim, complainants' subsequent entry thereon was a mere trespass which could confer no right in the land, regardless of the fact that defendant at the time was not in actual occupancy.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 64, 65; Dec. Dig. § 27.*]

In Equity.  Suit by Morse S. Duffield and another against the San Francisco Chemical Company.  Decree for defendant.

This is a suit brought under section 2326, Rev. St. (U. S. Comp. St. 1901, p. 1430), to determine the conflicting rights of the parties to certain adverse mining locations in the Pruess Mountains, Bear Lake county, Idaho, and to quiet complainants' title to the premises involved.  Defendant in a cross-bill asks similar relief against complainants.

The controversy grows out of these facts: The only valuable mineral discovered on the claims in question, and to acquire which the locations of both parties are intended, is calcium phosphate, or rock phosphate, which is found in sedimentary beds or deposits.  These deposits, of precisely similar formation and character throughout, extend and form a part of the earth's stratification over an area of country, including that in which the present locations are made, several hundred miles both east and west and north and south, and including parts of the states of Nevada, Utah, Wyoming, Idaho, and Montana.  While the deposits present some of the characteristics of lode formation in the broader definition of that term, in others they more nearly resemble placer ground.  The successive strata of phosphoric limestone of which the deposits consist are found in place in the mass of the mountains between defining walls of country rock, with outcroppings on the surface at irregular intervals, and are of different color, texture, and specific gravity from the adjoining beds of shale and limestone, and have a dip and strike conforming to the stratification of the sedimentary beds, and the mining is accomplished by blasting and other methods appropriate to lode mining; but, on the other hand, such deposits are not at all in character that of mineralized rock in the geologic sense.  They are not found in fissures or crevices in the earth's crust, nor are they to any extent of igneous formation, but are admittedly of sedimentary character apparently having their origin along with and in the same manner as the different strata above and below; nor is the material mined to extract the mineral substance therefrom, but, like coal, limestone, gypsum, or building stone, is used and principally valuable as a whole in its natural state.  The exact processes of nature by which the beds or deposits were impregnated with the elements for which they are now

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

valuable is in question, but it is not material. The rock is used as a fertilizer.

The indefinite nature of these deposits in the particulars noted has induced the Land Department to vary somewhat inconsistently in its determination of the question whether they are properly the subject of lode location and to be sold as such, or to be located and sold as placer ground; the department having granted to the defendant a patent under a placer location for a claim in the midst of those here involved on the same deposit or bed, and allowed final entries on a number of other like locations on similar deposits in the same section of the country, whereas it has, on the other hand, passed to patent a number of lode locations on the same character of formation within the general area above described.

Such being the general character of the subject of the claims here involved, the ground in dispute was duly located by the defendant's predecessors as placer in the years 1904 and 1905; and it is stipulated that the defendant and its predecessors have since in due course performed all acts required by law to perfect its several locations as such down to the time of the commencement of this suit. The complainants, with knowledge of the prior locations of defendant and its predecessors, entered upon the land in 1907, and proceeded, against the notification and objection of defendant that they were trespassers, to file lode locations on the same bed or deposit covered by defendant's locations, and, after some threatened litigation between the parties, complainants were suffered by the defendant, without waiving its objections to the validity of their claims, to proceed and do the necessary assessment work; and it is stipulated that, aside from the questions arising out of the alleged trespass of the complainants in making their locations and the claimed prior rights of defendant, they have done the necessary acts to perfect them down to the time of filing this suit. On August 11, 1910, defendant filed its applications for patents upon its several placer locations involved, and thereafter the plaintiffs filed adverse claims thereto, and in due time commenced this action.

C. B. Jack and C. C. Dey, of Salt Lake City, Utah, A. B. Gough, of Montpelier, Idaho, and A. L. Hoppaugh, of Salt Lake City, Utah, for complainants.

Clark & Budge, of Pocatello, Idaho, for defendant.

VAN FLEET, District Judge (after stating the facts as above). The only question seriously mooted in the case is as to the limitations of the court's inquiry in determining the rights of the parties. The theory of the complainants is that to determine those rights it is necessary, and the court has the power, to inquire into and determine the character of the land, the mineral deposit, involved in the controversy—that is, as to whether it is lode or placer in its nature—and that if it is lode, as complainants confidently assert, the placer applications, although prior in date, are absolutely void, and the land must be awarded to the complainants under their later locations. The contention of defendant, on the other hand, is that the character of the land in the particular involved is not a question for the court at all but for the Land Department, and that the court has no power to bind the latter by any decision it might attempt to make on that question, that the sole function of the court in such a suit is to determine the right of possession as between the parties, and this is dependent solely upon the regularity and sufficiency of the steps taken respectively to give one party or the other a prior right to such possession, independently of any question as to whether the character of the deposit involved is lode or. placer.

As between these contentions, I am of opinion that the law is with the defendant.

[1] It would seem to be thoroughly well settled, not only by the Land Department, but the courts, that the action authorized by section 2326, R. S. (U. S. Comp. St. 1901, p. 1430), is purely possessory in character. The paramount title in the land, the fee, resting in the government, the inquiry which is submitted by the statute to be tried as between the contending claimants in an adverse suit, no matter what the form of action adopted, which may vary in different jurisdictions, is solely as to those questions which will enable the court to say which of the contesting claimants is prior in right under the law to the present possession; that all other questions, including that of the character of the land in dispute, are committed by the statute to the Land Department as a special tribunal, which alone has authority to decide them, and whose determination is final and conclusive upon all departments of the government, including the courts. 2 Lindley on Mines, § 754; Costigan, Mining Law, 374; Snyder v. Waller, 25 Land Dec. Dept. Int. 7; Henderson v. Fulton, 35 Land Dec. Dept. Int. 652; Alice Placer Mine, 4 Land Dec. Dept. Int. 314; Wolverton v. Nichols, 119 U. S. 485, 7 Sup. Ct. 289, 30 L. Ed. 474; Steel v. St. Louis Smelting Co., 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; Clipper M. Co. v. Eli M. Co., 194 U. S. 221, 24 Sup. Ct. 632, 48 L. Ed. 944; Id., 33 Land Dec. Dept. Int. 660, 667.

The Secretary of the Interior in the case of the Alice Placer Mine, supra, in discussing the effect of the judgment of the court in an adverse suit like the present, held:

"The judgment of the court is, in the language of the law, 'to determine the question of the right of possession.' It does not go beyond that. When it has determined which of the parties litigant is entitled to possession, its office is ended, but title to patent is not yet established. * * * The judgment roll proves the right of possession only. The applicant must still make the proof required by law to entitle him to patent. Branagan et al. v. Dulaney, 2 Land Dec. Dept. Int. 744. The sufficiency of that proof is a matter for the determination of the Land Department. It follows therefore that further hearing may, if deemed necessary, be ordered, for the purpose of ascertaining with greater certainty the character of the land, or whether the conditions of the law have been complied with in good faith."

In Steel v. St. Louis Smelting Co., supra, Mr. Justice Field, speaking of the functions of the Land Department in the disposition of the public lands, employs this strong and explicit language:

"We have so often had occasion to speak of the Land Department, the object of its creation, and the powers it possesses in the alienation by patent of portions of the public lands that it creates an unpleasant surprise to find that counsel, in discussing the effect to be given to the action of that department, overlook our decisions on the subject. That department, as we have repeatedly said, was established to supervise the various proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of Congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceedings for its annulment

or limitation. Such has been the uniform language of this court in repeated decisions."

In Clipper Mining Co. v. Eli Mining Co., supra, the effect and limitations of the judgment in an adverse suit are very fully considered. That was a case involving conflicting applications between a placer and a lode claimant. Before the bringing of the adverse suit the placer claimant had applied for patent, which had been denied, and this decision of the department was relied on by the lode claimant as a defense to the action. But it appeared that the denial of a placer patent was not put on the ground that the land was not subject to that form of location, but that the department did not have before it at the time sufficient proof of its placer character. The trial court held that, the placer claimant being prior in time and his various steps being in all formal respects regular, he must be awarded the right to the possession without reference to the character of the land. The ruling was affirmed by the Supreme Court of the state, and the case was taken by writ of error to the Supreme Court of the United States. In discussing the effect and scope of its decision sustaining the judgment of the state courts, the Supreme Court says:

"We must not be understood to hold that, because of the judgment in this adverse suit in favor of the placer claimants, their right to a patent for the land is settled beyond the reach of inquiry by the government, or that the judgment necessarily gives to them the lodes in controversy. In 2 Lindley on Mines, § 765, the author thus states the law: 'Notwithstanding the judgment of the court on the question of the right of possession, it still remains for the Land Department to pass upon the sufficiency of the proofs, to ascertain the character of the land, and determine whether or no the conditions of the law have been complied with in good faith.'"

And referring approvingly to the ruling of the Land Department in the case of the Alice Placer Mine, supra, as to the effect on the department of the judgment or decree in an adverse suit, the court add:

"This opinion was cited as an authority by this court in Perego v. Dodge, 163 U. S. 160, 168, 16 Sup. Ct. 971, 41 L. Ed. 113, 118. See, also, Aurora Lode v. Bulger Hill and Nugget Gulch Placer, 23 Land Dec. Dept. Int. 95, 103. The Land Office may yet decide against the validity of the lode locations, and deny all claims of the locators thereto. So, also, it may decide against the placer location, and set it aside; and, in that event, all rights resting upon such location will fall with it."

These cases proceed upon the theory that the question of the character of the land to be sold is not one of law, but purely one of fact dependent upon the physical characteristics of the land, to be determined from investigation of its particular properties, and that this investigation and the resultant classification are committed by Congress solely to the judgment of the Land Department, in which it can be in no wise controlled by the courts.

The complainants contend that the principles thus invoked by defendant have application only to the extent of committing to the Land Department the right to determine the character of the land as between agricultural and mineral claimants, and do not obtain in a contest like the present as between mineral claimants. There is no such limitation of the right to be found either in the statute or the cases

198 F.—60

construing it; nor is there any obvious reason for such a distinction. The question as to the real character of the land sought to be purchased is no different in principle where it arises as between an agricultural claimant on the one side and a mineral claimant on the other than where it arises between two mineral claimants differing only in their claim as to which class of mineral lands, lode or placer, it is to be assigned. It is no more a question of law or less one of fact in the one instance than it is in the other. It is true that the cases that have heretofore arisen between lode and placer claimants all involve instances where no question arose as to the particular character of the mineral deposit involved, but the controversy grew out of other considerations affecting the legal aspects of the conflicting claims. Here the very question of difference, and the only one apparently giving rise to the controversy, is whether the deposit which the parties seek to acquire by their respective locations is placer in character or lode in character. The case may be said to be sui generis perhaps in that respect, but it can make no difference in the application of the principle under consideration. It would therefore be an idle act, a work of mere supererogation, for the court to assume the determination of a question which would exert no binding effect upon the rights of the parties.

In the case of Webb v. American Asphaltum Co., 157 Fed. 203, 84 C. C. A.. 651, relied upon by complainants, in which it appears the court assumed to pass upon the character of the land, no question appears to have been made as to its right so to do, and the case cannot be regarded as countervailing the rule established by the authorities above referred to.

It results from these considerations, in view of the conceded facts, that the right to the possession of the premises in dispute must be adjudged to be in the defendant. This being so, the complainants acquired no rights whatsoever in the land by their subsequent locations, and the defendant is entitled to have its title quieted as against those claims.

[2] The defendant having acquired a prior right to the possession, the entry of complainants was a mere trespass which could confer no right in the land, and the fact that the defendant was not at the time in the actual occupancy would make no difference. Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735. The complainants assert that they had a right to go upon the land and locate a known lode, not claimed by the placer claimants. But this is assuming the very fact which it is not the province of the court to decide. It would be highly inequitable, should the Land Department hereafter hold that the land in dispute is subject only to lode location, that the complainants should be permitted to take advantage, as giving them prior rights, of locations made under such circumstances. It would be giving them the benefit of a mistake on the part of defendant in a respect as to which the Land Department itself would appear to have been uncertain, and such a result the law will not countenance.

It results that a decree should go in favor of defendant quieting

its title to the disputed premises, adjudging the invalidity of complainants' locations, and awarding defendant its costs; and it is so ordered.