[No. 39139. Department Two. August 10, 1967.]

NUGGET PROPERTIES, INC., *Appellant*, GOLDEN THUNDERBIRD MINING COMPANY, INC., *Plaintiff*, v. COUNTY OF KITTITAS et al., *Defendants*, BARBARA ASHMAN et al., *Respondents*.*

*Reported in 431 P.2d 580.

*John Thomas, Fitch & Fitch, Harry Cross,* and *Lycette, Diamond & Sylvester,* for appellants.

*Jack McSherry,* for respondents.

SHORETT, J.†—Tucked away high in the Cascade Mountains, 16 miles from CleElum, lies the justly famous mining town of Liberty, founded in the 1880's by gold miners who came West hoping to get rich. Liberty was earlier known as Meaghersville and Placerville, and there is some suggestion in the evidence that the town's location was actually moved about one-half mile in the early days. There is also some evidence that the miners surveyed the townsite, divided it into lots, built houses, dug wells, and that Liberty even boasted of a saloon, school, general store, community hall, post office and assay office. During the depression, in the early 1930's, the population of Liberty jumped to 300, for a man could pan gold nearby and average a dollar per day upon which he could exist and some preferred this life to the soup lines of the city.

Evidently, the hopes and ambitions of the early miners were never realized for Liberty has atrophied; the store, school, post office and community hall are gone. There remain only about a dozen houses and shacks; in them live or exist the last of the old breed. Each inhabitant has a claim nearby and undoubtedly each dreams that the big strike will come tomorrow. The respondents are among those owning or occupying houses in Liberty. But the land upon which Liberty is built belongs to the United States Government. Neither respondents nor their predecessors have ever attempted to establish a legal townsite under the townsite laws of the United States. 43 U.S.C. §§ 711-20 (1964). Nor does the record establish respondents' claim that the townsite of Liberty was established by such local customs and rules of miners as are recognized by the United States. As against the United States, respondents are squatters or mere occupiers of the land. It will avail them nothing to

---

†Judge Shorett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

show that the buildings were built 10, 20, 50 or even 80 years ago, for no one can acquire title by holding adversely to the United States. Nor will it do to claim that the United States at one time approved the miners' occupancy of the land by establishing a post office and assay office in Liberty, for, as everyone knows, one hand of the federal government may never be charged with knowledge of what the other is doing.

Almost the whole town of Liberty is within the boundaries of an unpatented placer mining claim called New Discovery, located in 1918 by one William Anderson to whose title the appellant has succeeded by recent purchase.

The appellant is a placer mining company of substance whose modern machines can extract gold from 250 cubic yards of soil and gravel each hour. It has title to the New Discovery and its machines stand ready to devour the soil upon which respondents' shacks and cabins are built. Appellant brings this action to quiet title to the New Discovery claim.

By affirmative defense, respondents claim (1) prescriptive rights based upon adverse possession for more than 10 years; (2) estoppel and laches; and (3) other matters to which we think detailed reference unnecessary.

The United States is not a party and has held itself aloof from the controversy, but the ground rules for the contest are established by 30 U.S.C. § 53 (1964):

> No possessory action between persons, in any court of the United States, for the recovery of any mining title, or for damages to any such title, shall be affected by the fact that the paramount title to the land in which such mines lie is in the United States; but each case shall be adjudged by the law of possession.

No attack is made upon appellant's or its predecessors' title to the New Discovery placer claim. It is noted that the New Discovery was located in 1918, and a prior claim known as the Discovery was located in approximately the same place about 1885. Evidently, the original Discovery had been abandoned prior to 1918.

The evidence indicated that William Anderson, who located the New Discovery in 1918, owned a homesite in Liberty and in 1945 conveyed the same to Clarence B. Jordin, one of the respondents.

In 1928, one of appellant's predecessors, the Salem Mining Company, attempted to patent the New Discovery. In accordance with accepted procedure, a United States mineral surveyor, Robert F. Scott, made a report on the various aspects of the application for patent. This report lists all of the buildings located in the town of Liberty, and then continues:

> Most of the old mining camp formerly known as Meaghersville, now know[n] as Liberty is situated on this mining claim, . . . .
>
> None of the ground occupied by the mining camp has ever been mined for the placer gold which it might contain, but actual mining by underground drifting has been done along Williams Creek and for one or two hundred feet on each side of it.
>
> I am of the opinion that the southerly portion of this mining claim is more valuable for placer mining than for any other purpose.

The reference of Mr. Scott to the mining which had been done on the New Discovery is to the established fact that all exploration and mining, until very recently, has been done in a portion of the claim between corners 4 and 6 in the southwesterly portion where there are no cabins.

Some of respondents and predecessors of others filed protests to the 1928 patent application, but after a date was set for hearing on the protest, the application was canceled. Appellant's predecessors, having an opportunity to resolve the dispute in a forum of the federal government, withdrew from the contest. The appellant could now make application for a patent to the New Discovery and thus have the controversy decided before a federal board or court, but rather has chosen the state courts where the holder of the basic title (the United States) will be absent. The appellant, of course, takes its title to the New Discovery with all the frailties attached to the title of its predecessors.

Based upon the following finding, the trial court resolved the issue of prescriptive rights in respondents' favor:

That certain of these Defendants or their predecessors in interest have for more than ten years last past, some since 1882[,] openly, notoriously, continuously, under some color of title[,] held the surface rights to a portion of the said New Discovery Claim, together with certain walks, paths and improvements in a manner hostile to the rights, title and interest of the Plaintiffs, and that such adverse use was of such a nature as to make the disturbing of the surface, which is essential to placer mining, impracticable in such portion.

The judgment enjoined appellant from "interference with so much of said premises as are actually used by the said Defendants; . . . ." Having reached this conclusion on the issue of adverse possession for the statutory period, the trial court entered no findings of fact on other issues raised by respondents' affirmative defenses.

On this appeal we think it necessary to discuss only two points: (1) Did the respondents, through their predecessors, acquire prescriptive rights to a portion of the New Discovery mining claim by holding openly, notoriously, continuously and adversely to all the world for more than 10 years? (2) Under the facts of this case was there estoppel or laches on the part of appellant or its predecessors of such a nature that a court of equity will not enforce appellant's primary right to possession of its mining claim?

■ An understanding of the nature of mining claims on public mineral lands is necessary to a decision on the first point. Adverse possession of a mining claim for the local prescriptive period can give the possessor the rights of a locator upon which to base an application for patent. *Newport Mining Co. v. Bead Lake Gold-Copper Mining Co.*, 110 Wash. 120, 188 Pac. 27 (1920). See 30 U.S.C. § 38 (1964). But, to acquire this right requires both possession and some working of the claim. Otherwise adverse possession of mineral land in the public domain cannot ripen into prescriptive rights. Congress has opened such lands to exploration and the filing of mining claims in order to encourage the discovery of minerals and their production. This basic pur-

pose would be thwarted if adverse claims of a non-mining nature were recognized.

In the leading case of *Deffeback v. Hawke,* 115 U.S. 392, 404, 407, 29 L. Ed. 423, 6 Sup. Ct. 95 (1885), the rule is stated:

[N]o title from the United States to land known at the time of sale to be valuable for its minerals of gold, silver, cinnabar, or copper can be obtained under the pre-emption or homestead laws or the town-site laws, or in any other way than as prescribed by the laws specially authorizing the sale of such lands, . . . .

. . . .

And there can be no such thing as good faith in an adverse holding, where the party knows that he has no title, and that, under the law, which he is presumed to know, he can acquire none by his occupation.

To the same effect see *Sparks v. Pierce,* 115 U.S. 408, 413, 29 L. Ed. 428, 6 Sup. Ct. 102 (1885), where the court said:

A person who makes improvements upon public land, knowing that he has no title, and that the land is open to exploration and sale for its minerals, and makes no effort to secure the title to it as such land under the laws of Congress, . . . has no claim to compensation for his improvements as an adverse holder in good faith when such sale is made to another and the title is passed to him by a patent of the United States.

And in 1 C. Lindley, Mines § 219 (3d ed. 1914):

If a party goes upon the mineral lands of the United States and either establishes a settlement or works there-on without complying with the requirements of the min-ing laws, and relies exclusively upon his possession or work, a second party who locates peaceably a mining claim covering any portion of the same ground, and in all respects complies with the requirements of the mining laws, is entitled to the possession of such mineral ground to the extent of his location as against the prior occupant, who is, from the time said second party has perfected his location and complied with the law, a trespasser.

The peaceable adverse entry by the locator, coupled with the perfection of his location, operates in law as an ouster of the prior occupant.

The only prescriptive rights which are recognized are those founded on both possession and working of the claim itself.

We conclude that the respondents could not, by the nature of their adverse possession shown in the record, acquire prescriptive rights in the New Discovery mining claim.

We come then to the second point which encompasses the claim of estoppel and laches. We think that the doctrines of equitable estoppel and laches apply because of certain acts, and failures to act, on the part of appellant's predecessors. Anderson, who located the New Discovery claim in 1918, owned a house in Liberty and later sold the same to one of the respondents. Further, in 1928, the Salem Mining Company tried to patent the New Discovery claim and found its application met with the adverse claims of respondents. Faced with this contest, appellant's predecessor canceled its patent application and for over 35 years those in appellant's chain of title stood by in apparent acquiescence and silence while the respondents continued to live upon the property they claimed. Over those many years the respondents expended money and effort in maintaining their structures which otherwise would have long since fallen in ruin.

Equitable defenses are available in mining actions brought in state courts. *Teeter v. Brown*, 130 Wash. 506, 228 Pac. 291 (1924); *Harvey v. Laurier Mining Co.*, 106 Wash. 192, 179 Pac. 864 (1919); *Florence-Rae Copper Co. v. Iowa Mining Co.*, 105 Wash. 503, 178 Pac. 462 (1919); *Yarwood v. Johnson*, 29 Wash. 643, 70 Pac. 123 (1902). The case of *Florence-Rae Copper Co. v. Iowa Mining Co., supra,* presented a contest between claimants to the possessory right to mining claims where one party had attempted to relocate certain claims and proceeded to spend large sums of money in the development of those claims while the other party stood by making no protest for more than two years. The court said at 506: "Under these circumstances, it must be held that the appellant is estopped to assert a possessory right to the claims."

■ In 3 Pomeroy, Equity Jurisprudence § 818 (5th ed. 1941), the general rule is stated:

Acquiescence consisting of mere silence may also operate as a true estoppel in equity to preclude a party from asserting legal title and rights of property, real or personal, or rights of contract. The requisites of such estoppel have been described. A fraudulent intention to deceive or mislead is not essential. All instances of this class, in equity, rest upon the principle: If one maintain silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent. A most important application includes all cases were an owner of property, A, stands by and knowingly permits another person, B, to deal with the property as though it were his, or as though he were rightfully dealing with it, without interposing any objection, as by expending money upon it, making improvements, erecting buildings, and the like.

In *Cunningham v. Independence Consol. Mining Co.*, 58 Wash. 371, 380, 108 Pac. 956 (1910), this court declared that the doctrine of laches "is most frequently applied in mining cases, . . . ." To the same effect see *Patterson v. Hewitt*, 195 U.S. 309, 49 L. Ed. 214, 25 Sup. Ct. 35 (1904).

We conclude that while appellant may have technical ownership of the New Discovery, it brings an extremely stale claim into the court of equity. The actions of appellant and those from whom it draws its title, have given the respondents a sense of security over many years. In that security they have sunk their roots and maintained both their homes and the community sense of their village. Appellant now, after many years of silence, seeks to destroy those homes and obliterate that village. Equity and fairness require that the principles of equitable estoppel and laches, invoked by respondents, be applied to prevent an injustice.

The judgment is affirmed.

FINLEY, C. J., HILL, DONWORTH, and HAMILTON, JJ., concur.

---

October 4, 1967. Petition for rehearing denied.