451 P.2d 626

Arthur C. W. BOWEN, Appellant,

v.

SIL–FLO CORPORATION, Appellee.

No. 1 CA–CIV 744.

Court of Appeals of Arizona.

March 10, 1969.

Rehearing Denied April 18, 1969.
Review Denied May 20, 1969.

Affirmed as modified.

MOLLOY, Judge.

This is an appeal from a judgment rendered in a declaratory judgment and quiet title action as to unpatented mining claims. The action is, in part, a suit to determine an adverse claim filed in a patent application proceeding as to two placer mining claims. *See* 30 U.S.C.A. §§ 29–32 inclusive.

This case has previously been before our Supreme Court on the question of whether the Maricopa County Superior Court had jurisdiction of the action, to which an affirmative answer was given. Sil-Flo Corporation v. Bowen, 98 Ariz. 77, 402 P.2d 22 (1965).

The entire area in dispute is covered by an application for patent now pending before the Secretary of the Interior of the United States, No. AR–030706, to which application, the plaintiff, Sil-Flo Corporation, filed an adverse claim within the 60-day-limit set by Title 30 U.S.C.A. § 29.[1] The judgment of the trial court was in favor of the plaintiff Sil-Flo. The trial court rendered detailed findings of fact and conclusions of law. We state the critical facts from these findings, which we find to be amply supported by the evidence, occasionally supplementing them from the evidence admitted at this extended trial. In so doing, conflicting evidence has been resolved in favor of supporting the judgment of the trial court.

The lands over which this controversy rages are mineral lands, the fee title of which is in the United States of America. They are located in the Pioneer Mining District, Pinal County, Arizona, southwest of the City of Superior. These lands contain within their boundaries valuable deposits of ore of a substance known as perlite, which is a volcanic rock or glass containing intercellular water in such physical combination that, when the ore is treated in certain ways, and heated, the ore ex-

Engdahl, Jerman, Butler & Estep, by Dean Estep, Phoenix, for appellant.

Evans & Kunz by Donald R. Kunz, Phoenix, for appellee.

1. Thus creating a different posture for this case from that in Bowen v. Chemi-Cote Perlite Corporation, 102 Ariz. 423, 432 P.2d 435 (1967), which case involved the overlapping of these same placer claims over two other lode claims of Chemi-Cote Perlite Corporation, which did not file an adverse claim within the 60 days permitted by 30 U.S.C.A. § 29.

plodes into a fluffy white substance which has many industrial uses, the principal one of which is that of being used as a filtering medium.

In its natural state, this perlite is intermixed with quantities of rhyolite, a harder rock which is of the same chemical constituency as perlite but which is of a different physical composition and which does not have the valuable physical properties of perlite. This non-perlitic rock constitutes approximately ten per cent of the total earthy matter which is mined in these depoisits of perlite and this waste must be separated from the perlite in order for the perlite to have valuable use. Perlite is a mineral substance and, in the manner in which it is distributed on the property in question, is commercially valuable.

In the area of the claims in question, the perlite ore is readily distinguishable in appearance and physical properties from the surrounding rock. The perlite in the area of the lode claims lies in one or more "blankets" or "pancakes" in an almost horizontal plane, with a dip of approximately 9° to the east.

The first mining claims in this area sufficiently supported by the required notices and monumenting were lode claims established in the Spring of 1944 by an F. Y. MacDonald. Among the claims so established are the two lode claims found by the court to be owned by the plaintiff, the "Elva F. No. 1" and "Sandy No. 1." The plaintiff acquired its "title" to these claims through conveyances from MacDonald to an Edward S. Adams and from Adams to the plaintiff. The defendant, Bowen, actually did the physical location work for these MacDonald claims, under an arrangement with MacDonald, and in the same year, 1944, laid out for himself the two lode claims ("David R. No. 1" and "Superior Perlite No. 1") which the trial court found were the property of the defendant, subject to certain possessory rights of the plaintiff by reason of two written contracts with Bowen. If the ore body or bodies discovered on these claims is subject to the lode mining claim statute, 30 U.S.C.A. § 23, there is no question but what all these four lode claims were validly located and that all necessary assessment work was done to hold the claims throughout all of the period of time with which we are concerned in this action.

When the lode claims of MacDonald and Bowen were laid out, it was the custom in this mining district to locate perlite ore under the lode claim statute. However, by 1946, some of the locators were covering their lode claims with placer claims in order to have a double chance of satisfying the ambiguities of the pertinent federal acts. In 1950, Bowen, through an association of friends and relatives, laid out a 160-acre placer claim which he called Superior Perlite No. 1. The total approximate area of the four lode claims with which we are concerned is 80 acres. The new placer claim covered Bowen's two previously located lode mining claims, Sil-Flo's Elva F. No. 1, and a substantial area around these claims. Similarly, in 1954, Bowen laid out the Superior Perlite No. 2, which encompassed the area of the plaintiff's Sandy No. 1. These two placer claims are the ones that Bowen contends, in this litigation, have swallowed up all of Sil-Flo's rights in this area.

Since the Fall of 1953, the plaintiff has been actively mining the Elva F. No. 1 and the Sandy No. 1 lode claims, with most of the ore being removed from the Elva F. No. 1. Until 1957, this mining was performed under a lease option agreement with Adams, which resulted in the plaintiff acquiring ownership of Adams' claims in 1957.

In March of 1954, Bowen entered into an "Agreement" with Sil-Flo as to the Superior Perlite No. 1 and David R. No. 1 lode claims, by which Bowen was paid $350 cash in hand and by which he was to receive a minimum of $100 per month. In this agreement, there is a provision that Bowen and his heirs and assigns " * * * do hereby grant unto party of the second part [Sil-Flo] and its assigns the right to mine, re-

move and sell Perlite Ore from the above described property [the two lode mining claims]." In addition to the minimum payment of $100 per month, Sil-Flo was required to pay certain royalties on ore removed, to do assessment work, and to pay taxes. This agreement has no termination date and the only provision for cancellation contained within the contract is one that permits Bowen to terminate the contract if Sil-Flo "* * * fails, neglects or refuses to perform conditions required of it under the terms of this agreement, including the payments required of it to be paid * * * *"

Prior to this agreement, Bowen made no mention to Sil-Flo of his overlying placer claim, Superior Perlite No. 1 (the only such claim of Bowen's then existing), and the agreement itself contains no mention of this claim. In the agreement, Bowen covenanted:

"* * * that he is the lawful owner of the said property [the two lode claims] and he does hereby warrant that the same is free and clear of all claims, liens, mortgages, and encumbrances whatsoever, and that he will defend the right of the second party to the peaceful use of said property under the terms of this agreement against the claims of all persons."

Sil-Flo was ignorant of the existence of Bowen's placer claim at the time it entered this 1954 agreement. Shortly after its execution, Bowen had a conversation with the president of Sil-Flo in which he disclosed the existence of a placer claim in the general area of these lode claims which he stated covered only the "fractions" between the various lode claims in the area. He indicated that he would be willing to include this placer claim in his agreement with Sil-Flo for a nominal consideration, the additional area to be used as a mill site or for the disposition of overburden taken from the top of the perlite ore. At the time of this conversation, Bowen professed not to know the geographic relationship between the placer claim and the lode claim and it was agreed between Sil-Flo and Bowen that a mining survey of the area would be made.

This oral conversation was confirmed in letters from Bowen to Sil-Flo, dated March 23, 1954, and March 25, 1954. In Bowen's letter of March 23, 1954, there was the following:

"I am anxious regards the milling right we talked about. To have the ore properly prepared is important to me in every way.

"If you recall I referred to a Placer location filed after the lode *to pick up any small fractions that may exist* or discouvered [sic] when we survey. I could never find the one quarter corner between Sections eight and nine. Harry has worked in that section before and he never could find the marker. * * * I believe the lode claims are all within the Placer Location." (Emphasis added.)

In the letter of March 25 1954, there is the following statement:

"When I find out where the Placer lies, it will give us more land for Mill Sights [sic] and Camp Sight [sic]. It will not increase the tannage [sic] of perlite."

Subsequently, another conversation ensued on May 8, 1954, and Bowen sent to Sil-Flo a letter of that date confirming the conversation in which Bowen made a written offer to add two[2] placer claims to the 1954 agreement:

"Confirming my conversation to-day with you at the San Carlas [sic], Hotel Phoenix, Arizona.

"Wherein I represented to you as holding a Passessory [sic] Placer Mineral Right on certain Perlite Placer Mining Claims described and recorded in Pinal County, Arizona, Recorders Office as follows;

| Namw [sic] | Placer | Docket | Page |
|---|---|---|---|
| Superior Perlite | No 1 | #63577 | 192 |
| Superior " | " 2 | #106767 | 525 |

was subsequently amended, to make it a full 160 acres, on June 1, 1954.

---

2. Bowen's second placer location, for Superior Perlite Placer No. 2, was first filed on April 12, 1954, as a 100-acre claim and

272

"Wherein I agreed to transfer said right to you in consideration of One Dollar (1.00) in hand paid, receipt acknowledged.

"This right to be drawn up *and attached to the original Lode Rights you now hold* and covers all rights on mineral in said claims." (Emphasis added.)

Sil-Flo continued to mine and pay royalties under its original agreement with Bowen until approximately one year later when it determined that it could advantageously use the additional land encompassed in the placer claims. It therefore accepted Bowen's still outstanding offer and, in June of 1955, a "Supplemental Agreement" was entered into between the parties pertaining to the two placer claims. In the recitals to the agreement, it is stated in the first paragraph:

"WHEREAS the said ARTHUR C. W. BOWEN has located and now holds two (2) Placer Mining Claims which are *adjacent* to the mining claims described in the above referred to Agreement [agreement of March 1954]." (Emphasis added.)

The "Supplemental Agreement" provides that the two placer claims would be leased " * * * under the terms and conditions provided for in the aforesaid Agreement of March 6, 1954 * * *." There is no additional consideration to be paid to Bowen by Sil-Flo other than the provision that it would pay a royalty upon any ores shipped from these claims.

After the execution of this supplemental agreement, Sil-Flo continued to mine from the Elva F. No. 1 and the Sandy No. 1, and up to and including the filing of an unlawful detainer action by Bowen against Sil-Flo in 1960, Bowen made no claim for royalties for ores shipped from these two lode claims. His acknowledgment of the ownership by Bowen of these claims is recognized in correspondence between the parties over the years.[3]

On July 27, 1960, Bowen filed a complaint in forcible detainer against Sil-Flo as to both the two lode claims and the two placer claims which he had leased to Sil-Flo. In his complaint, Bowen verified that he was the owner and entitled to the possession of all four of these claims. This suit went to judgment in favor of Sil-Flo and we will subsequently discuss the findings of fact and judgment rendered in that case to determine the extent to which it is res judicata of issues raised in this action.

The judgment in the unlawful detainer action was rendered on April 17, 1961, and no appeal was taken from this judgment. In July of 1961, Bowen, without giving any notice to Sil-Flo of his intention to do so, filed application for patent on the placer claims. The application does not acknowledge the existence of plaintiff's lode claims within the area of the two placer claims, but the application does indicate that there might be some controversy as to whether the area of these claims is lode or placer in character.

The most significant finding by the trial court in this action was that the areas encompassed by these four lode mining claims contain veins or lodes of perlite ore

3. In a letter of April 25, 1954 (after the first placer location but before the second), Bowen wrote Sil-Flo [Exhibit 113 in evidence]:

"Will have to spend $100.00 on the Sandy #1 to cover your assessment work and also my Location work on placer #2 I will explaim [sic] more about this when I see you.

"Your location Mounment [sic] and paper on Alva [sic] has been destroyed. I will attend to that."

In a letter of August 15, 1958 (after both placer claims were filed and both agreements executed), Bowen wrote Sil-Flo [Exhibit 24 in evidence]:

"5. You have been mining perlite ore from a claim *owned by you* known as 'Elva'. In hauling ore from this claim it would be practicable for you to require your trucks to drive east from the pit to the road that has been established just north on said road to your plant. Instead of doing this, your truck drivers have been driving straight north from such pit on the 'Elva' claim across my mining claim Superior Placer #1." (Emphasis added.)

in place and are of such character that the ground within said lode claims was subject to being located under the lode claim statute. The court made no finding as to whether the areas outside these lode claims and within the placer claims of Bowen are subject to being located as lode or placer, apparently finding that the position of the parties was not adverse on this factual question.

On the basis of its factual findings, the trial court entered judgment which, in effect, quieted the title of Sil-Flo to the two lode mining claims, Elva F. No. 1 and Sandy No. 1, subject to the fee title of the United States of America, and declared that Sil-Flo was the owner of a right to mine and remove perlite ore from Bowen's two lode claims, Superior Perlite No. 1 and David R. No. 1 and from Bowen's two placer claims, Superior Perlite No. 1 Placer and Superior Perlite No. 2 Placer Amended, which right the court declared to be a continuing one for an indefinite term, subject to cancellation only if Sil-Flo defaulted in its obligations under the two written agreements with Bowen. The court further declared that Bowen's two lode claims were valid and subsisting, that Sil-Flo had not defaulted in its obligations under these agreements, and that, in the event Bowen should acquire title from the United States Government as to any of the subject claims, he would hold such title subject to the paramount rights of Sil-Flo, as established by the decree. Multiple contentions are advanced both attacking and supporting the decisions reached below. We believe that proper appellate disposition is achieved by coping with five questions.

## HAS THERE BEEN A DISCOVERY OF A LODE OR VEIN OF PERLITE ORE ON THESE FOUR LODE MINING CLAIMS?

Because of the apparently relentless dichotomy established by judicial inter-

pretation of pertinent mining statutes,[4] there has been a plethora of litigation to determine whether particular ore bodies are locatable as lode or placer. The many judicial decisions have left the distinction as beclouded as when the conundrum was first posed by the 1870 enactment of the second of the two controlling statutes, which, in their evolved form now read in pertinent part:

"Mining claims upon veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, * * * shall be governed * * *." 30 U.S.C.A. § 23.

"Claims usually called 'placers,' including all forms of deposit, excepting veins of quartz, or other rock in place, shall be subject to entry and patent, under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims; * * *." 30 U.S.C.A. § 35.

Words have been generously included in many judicial opinions in an attempt to remove the latent ambiguity inherent in this statutory language which results from the infinite variety of forms in which mineral wealth is found deposited in the earth's crust. Among the more quoted explanations of this elusive distinction is:

"What constitutes a lode or vein of mineral matter has been no easy thing to define. In this court no clear definition has been given. On the circuit it has been often attempted. Mr. Justice FIELD, in the Eureka Case, 4 Sawy. 302, shows that the word is not always used in the same sense by scientific works on geology and mineralogy, and by those engaged in the actual working of mines. After discussing these sources of information, he says: 'It is difficult to give any definition of this term, as understood and used in the acts of congress, which will not be subject to criticism. A fis-

4. In Cole v. Ralph, 252 U.S. 286, 295, 40 S.Ct. 321, 326, 64 L.Ed. 567 (1920), the Court said: "A placer discovery

will not sustain a lode location, nor a lode discovery a placer location."

sure in the earth's crust, an opening in its rocks and strata made by some force of nature, in which the mineral is deposited, would seem to be essential to a lode in the judgment of geologists. But to the practical miner the fissure and its walls are only of importance as indicating the boundaries within which he may look for and reasonably expect to find the ore he seeks. A continuous body of mineralized rock lying within any other well-defined boundaries on the earth's surface, and under it, would equally constitute, in his eyes, a lode. We are of opinion therefore, that the term as used in the acts of congress is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock.'

"This definition has received repeated commendation in other cases, especially in Stevens v. Williams, 1 McCrary, 488, where a shorter definition by Judge HALLETT, of the Colorado circuit court, is also approved, to-wit: 'In general it may be said that a lode or vein is a body of mineral, or a mineral body of rock, within defined boundaries, in the general mass of the mountain.'" Iron Silver Min. Co. v. Cheesman, 116 U.S. 529, 6 S.Ct. 481, 483, 29 L.Ed. 712 (1886).

■ In our view, there is substantial evidence in this record to support the trial court's finding that this perlite ore is in the form of a lode or vein. Three contentions are advanced as to why this deposit of perlite should not be regarded as a lode. Before considering these, it will clear the air to consider attacks that are *not* made here.

There is no contention made that, because this body of ore lies in a blanket or "pancake" shape, it is not subject to the lode mining statute. As to this, *see* Iron Silver Min. Co. v. Mike & Starr Gold & Silver Min. Co., 143 U.S. 394, 12 S.Ct. 543, 36 L.Ed. 201 (1892); San Francisco Chemical Co. v. Duffield, 201 F. 830 (8th Cir. 1912); Iron Silver Min. Co. v. Campbell, 17 Colo. 267, 29 P. 513 (1892); Duggan v. Davey, 4 Dak. 110, 26 N.W. 887 (1886); and 1 American Law of Mining § 5.20, at 763.

Nor is there any contention made that this perlite does *not* lay in a blanket-like shape. The appellant's expert witness, Robert Wilson, described this perlite as a "* * * blanket deposit * * *." All of the geological evidence indicates that, in order to form perlite, the flow of lava from which it originates must cool at a relatively rapid rate in comparison with other rhyolite rock and that, if it were covered deeply, it would crystalize to form a harder rhyolite with no known commercial use. Two diamond drill holes in the pit on the Elva F. No. 1 claim showed that the perlite turned abruptly to rhyolite at a depth of approximately 40 feet, this level being, in turn, approximately 100 feet below the top of the pit.

Nor is there any contention that this perlite is of the "softer" material, *see* Reynolds v. Iron Silver Min. Co., 116 U.S. 687, 6 S.Ct. 601, 605, 29 L.Ed. 774 (1886), or in a "loose state," *see* United States v. Iron Silver Min. Co., 128 U.S. 673, 9 S.Ct. 195, 197, 32 L.Ed. 571 (1888), so as to be placer. All of the evidence is to the effect that this perlite is hard rock and must be detached from its position in the earth by blasting methods customary to those used in open pits of hard rock ore.

■ Of the three attacks made, the principal one is that perlite does not satisfy the requirements of 30 U.S.C.A. § 23, because, though it is admittedly mineral in nature, it is not in lode form because it is not "* * * rock in place *bearing* gold, silver * * * or other valuable deposits * * *." (Emphasis added.) The argument is made that the perlite found in these beds is a valuable rock in itself but that it does not *contain* or *bear* valuable minerals. Bowen relies upon two authorities to support this view: Henderson v. Fulton, 35 L.D. 652 (1907); and 2 Lindley, Mines § 421 (3d ed. 1914). While the authority cited is pertinent, it is our view that there are more authoritative declarations that it is not disqualifying that a lode consists of

nonmetallic minerals of such a nature that the entire body of ore has commercial value.[5]

Decisions which are persuasive to this court are: San Francisco Chemical Co. v. Duffield, 201 F. 830 (8th Cir. 1912); Webb v. American Asphaltum Mining Co., 157 F. 203 (8th Cir. 1907); Duffield v. San Francisco Chemical Co., 205 F. 480 (9th Cir. 1913), reversing District Court decision at 198 F. 942 (1912). The impact of these decisions is summarized in the following statement:

"The idea that nonmetallic minerals were excluded from lode locations because only metallic minerals were mentioned by name in the statute was laid to rest in Webb v. American Asphaltum Mining Co. [157 F. 203 (8th Cir. 1907)], where gilsonite, a petroleum type of mineral, was held to be locatable as a lode, if the lode characteristics were present. Thereafter, deposits of calcium phosphate in Wyoming and Idaho were held to be lodes were [sic] circumscribed within the general mass of the mountain." 1 American Law of Mining § 5.10, at 741.

The second contention advanced as to why this perlite cannot be a lode is that it lies on the surface of the ground. Unquestionably, in the area of three of these lode claims (David R. No. 1, Superior Perlite No. 1 and Elva F. No. 1), there is exposed on the surface an irregularly shaped area of perlite ore, approximately 3,000 feet, in a north-south direction, by 1,000 feet in an east-west direction. In places within the area, the ore is covered by rhyolite or obsidian breccia, or by a thin pumiceous skin of waste material. This exposed, or nearly exposed area is in a depression between hills and has been subject to erosion for a substantial period of geologic time. Sil-Flo's Sandy No. 1 claim, to the east, has only a small area of exposed perlite, most of its deposit being covered by a layer of a rock called "Gila conglomerate."

Whether the ore there discovered is a projection of the same ore body exposed in the western claims is not conclusively shown by the evidence and there is no finding of fact on this point. A geologic study made at Sil-Flo's behest indicates that, to the west, the exposed body of ore disappears under a bluff of noncommercial rhyolite rock, and, on the east, projects under the same layer of Gila conglomerate that covers the Sandy No. 1. To the north of this main body of ore, the perlite grades into obsidian breccia, a rock with a similar chemical constituency to perlite but without its valuable physical properties. To the south, the geologic study does not indicate the reason for the termination of the exposed ore (the study being limited to the area of these claims), but Bowen's patent application and testimony at trial indicate that the north-south dimension of the exposed ore is 2000–3000 feet.

There is reputable authority holding that, in order for a mineral deposit to be a vein or lode, it cannot lie "merely on the surface." Quote from Ricketts, American Mining Law § 158, at 131 (4th ed.). Among the cases cited by Ricketts, to support his position and principally relied upon by the appellant here, are: Stevens v. Gill, Case No. 13,398, 23 Fed.Cas. 12 (D.C.Colo. 1879); Tabor v. Dexler, Case No. 13,723, 23 Fed.Cas. 615 (D.C.Colo. 1878); and Leadville Co. v. Fitzgerald, Case No. 8,158, 15 Fed.Cas. No. 98 (D.C.Colo. 1879). Each of these federal decisions was authored by Judge Hallett, a trial judge of early renown in mining jurisprudence. In each of this trilogy, the concern was with whether there were extralateral rights, *not* whether the lode claim was valid. That Judge Hallett considered that surface ore might be validly located as a lode is indicated by the following:

"For the decision of this motion it is enough to say, that where the mass overlying the ore is a mere drift, or a loose deposit, the ore is not 'in place,' within

---

5. This view makes it unnecessary to give critical significance to the trial court's finding, well supported by the evidence

here, that this ore had 10 per cent of waste material.

the meaning of the act. *Upon principles recently explained, a location on such a deposit of ore may be sufficient to hold all that lies within the lines*; but it can not give a right to ore in other territory, although the ore body may extend beyond the lines." (Emphasis added.) Tabor v. Dexler, 23 Fed.Cas. at 615.

■ No case has been cited which fits the facts here. In its findings, the trial court found that this perlite has "* * * a clearly defined hanging wall, readily apparent to visual inspection * * *." [6] The physical evidence would suggest that the "hanging wall," now existing to the west and east, at one time covered the exposed ore in the area of these claims. No authority has been called to our attention which would hold that, because a substantial portion of a vein or lode has been exposed by erosion, that it no longer has the characteristic of a lode. We see no purpose in creating new law which would thus metamorphose a lode into a placer and thus defeat bona fide efforts to satisfy these ambiguous statutes. This ore body is certainly fixed "in place" from a layman's view. If a lode cannot exist without a "hanging wall," and we do not find the law to be clear on this, we find a sufficient one here.

■ If our decision needs reenforcement, we find it in the fact that at the time this lode claim was initiated it was a custom in this mining district to locate similar ore under the lode statute. We agree with the following:

"A locator who makes a good faith location in reliance upon past practice should be protected regardless of the court's view as to what might have been the most appropriate form of location." 1 American Law of Mining § 5.20, at 764.

■■ The third attack upon lode status is that perlite is locatable as building stone under 30 U.S.C.A. § 161, and therefore can-

not be a lode. 30 U.S.C.A. § 161 reads, in part, as follows:

"Any person authorized to enter lands under the mining laws of the United States *may* enter lands that are chiefly valuable for building stone under the provisions of the law in relation to placer-mineral claims." (Emphasis added.)

By its very terms, this statute is permissive ("may"), and the appellant has cited no authority holding that, because a mineral deposit might be locatable under this section of the code, it necessarily could not be located as a lode. Again, this court sees no reason to create new law in this direction. The purpose of these statutes is to encourage development of the public domain by bona fide miners. Bagg v. New Jersey Loan Company, 88 Ariz. 182, 190, 354 P.2d 40, 45 (1960); Rummell v. Bailey, 7 Utah 2d 137, 320 P.2d 653 (1958). We see no reason to create a new trap for the unwary. Moreover, the only authority coming to our attention would indicate that perlite, being a building *material*, rather than building *stone*, does not come within the above-quoted "Stone Act." Dunbar Lime Co. v. Utah-Idaho Sugar Co., 17 F.2d 351 (8th Cir. 1926).

Finding that this perlite ore in the area of these four lode claims is a lode formation, it necessarily follows from the undisputed facts of this case that the judgment of the court quieting Sil-Flo's title to the Elva F. No. 1 and the Sandy No. 1 must be sustained. Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735 (1881). Similarly, it necessarily follows that Bowen's lode claims, David R. No. 1 and Superior Perlite No. 1, are valid claims in which there is a possibility of a leasehold or irrevocable license right in Sil-Flo under its written agreement. By upholding the judgment of the trial court in this regard, we find it unnecessary to determine (1) whether Sil-Flo has a vested possessory right to its two claims under the doctrine of adverse pos-

---

6. Part of finding of fact No. 23. The trial court is undoubtedly basing this finding in part upon photographs showing the perlite ore disappearing under the rhyolite and Gila conglomerate overlaps to the west and east, and upon the testimony of Mr. Edwin N. Pennebaker, mining geologist.

session, *see* 30 U.S.C.A. § 38, A.R.S. § 12–525, and Eagle-Picher Mining & Smelting Co. v. Meyer, 68 Ariz. 214, 204 P.2d 171 (1949); (2) whether Bowen's entry onto these lode claims by his placer locations was in "bad faith," *see* Woolsey v. Lassen, 91 Ariz. 229, 371 P.2d 587 (1962), Bagg v. New Jersey Loan Company, *supra*, Birchfield v. Thiercof, 5 Ariz.App. 484, 491, 428 P.2d 148, 155 (1967), and Brown v. Murphy, 36 Cal.App.2d 171, 97 P.2d 281 (1939); and (3) whether Bowen's application for patent to the placer claims, in which he made no mention of Sil-Flo's lode claims in the area, constituted " * * * a conclusive declaration * * *" that he had no right of possession as to these lode claims under 30 U.S.C.A. § 37.[7]

## DID THE "SUPPLEMENTAL AGREEMENT" BETWEEN BOWEN AND SIL-FLO COVER ONLY THE "FRACTIONS" BETWEEN THE LODE CLAIMS?

■ The controlling principle in the construction of any contractual agreement is to ascertain the mutual intent of the parties to the agreement, as expressed in that agreement. LeBaron v. Crismon, 100 Ariz. 206, 412 P.2d 705 (1966). In its findings, the trial court determined that these parties by their "Agreement" of March 6, 1954, and their "Supplemental Agreement" of June 25, 1955, intended to grant to Sil-Flo the right to mine and remove perlite ore from Bowen's lode claims, Superior Perlite No. 1 and David R. No. 1, and, by the supplemental agreement, to additionally include only the areas within the physical description of the placer claims which were not contained within the previously . existing

lode claims. Our examination of the record discloses substantial evidentiary support for this finding.

■ The circumstances giving rise to the supplemental agreement and the conduct of the parties thereafter make it crystal-clear that the parties did not intend this to be a superseding lease. There are sufficient patent ambiguities in these documents to permit these indicia to be recognized by the court. Rental Development Corp. v. Rubenstein Const. Co., 96 Ariz. 133, 136, 393 P.2d 144, 146 (1964), and *see* Arizona Land Title & Trust Co. v. Safeway Stores, Inc., 6 Ariz.App. 52, 58, 429 P.2d 686, 692 (1967). If the 1955 document were intended to abrogate the grant of the 1954 document, it would not be, in ordinary course, labeled a *"Supplemental* Agreement." Equally indicative of the true intent is the statement in the recitals of the 1955 document that the new grant was to be as to placer claims " * * * *adjacent to* the mining claims * * *" (emphasis added) which were the subject of the 1954 contract. A recital is a part of a contract which should be considered in determining the intent of the parties as expressed in the entire document, and on occasion a recital may be a most important indication of the parties' intent. Employer's Liability Assurance Corporation v. Lunt, 82 Ariz. 320, 313 P.2d 393 (1957).

Our interpretation of the supplemental agreement answers Bowen's contention that Sil-Flo is estopped under A.R.S. § 33–324[8] from questioning his title to the area within the placer claims. In our view, it is clear that Sil-Flo did not enter into the possession of any of the lode claims under the supplemental agreement of 1955.

7. 30 U.S.C.A. § 37 reads in pertinent part: " * * * and where a vein or lode, such as is described in section 23 of this title, is known to exist within the boundaries of a placer claim, an application for a patent for such placer claim which does not include an application for the vein or lode claim shall be construed as a conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim; * * *."

8. "When a person enters into possession of real property under a lease, he may not, while in possession, deny the title of his landlord in an action brought upon the lease by the landlord or a person claiming under him." A.R.S. § 33–324.

## ARE THE AGREEMENTS OF 1954 AND 1955 CANCELABLE AT THE WILL OF BOWEN?

It is Bowen's contention that, because these argeements do not provide for any definite term, they are cancelable by him at any time. To this contention, Sil-Flo responds that this question of the cancelability of these agreements was decided in the forcible detainer action of 1961 and that, under principles of res judicata, this issue cannot be relitigated now.

A principal contention advanced in this previous action by Bowen is the very same as advanced now.[9] This contention was disposed of by the trial court in this previous action by a distinct finding:

"FINDINGS OF FACT

\* \* \* \* \* \*

"That by said documents, 'Exhibit A' ["Agreement" of 1954] and 'Exhibit B' ["Supplemental Agreement" of 1955], plaintiff and defendant SIL-FLO CORPORATION created a particular interest in said real property which is the subject matter of said documents, and in certain perlite ore contained upon or within said real property, the said interest having elements of both a grant and a lease, whereby and whereunder plaintiff [Bowen] granted to defendant SIL-FLO CORPORATION the right to mine, remove and sell perlite ore from said real property, *such grant being permanent in nature,* subject to the termination provisions of 'Exhibit A', and whereby and whereunder said real property was leased to defendant SIL-FLO CORPORATION by plaintiff for an indefinite term, *on a month to month basis,* for the purpose of exercising the rights of said grant, provided that defendant SIL-FLO CORPORATION pay to plaintiff, each calendar month, the sum of $100.-00, whether or not any ores are moved from said premises during any calendar month by defendant SIL-FLO CORPORATION, said sum of $100.00 to be credited upon any royalties due from defendant SIL-FLO CORPORATION pursuant to the schedule of royalty payments set forth in Paragraph 7 of said 'Exhibit A' \* \* \* the Court finds as a fact that it was the intention of the parties to said 'Exhibit A' *to create a lease of said real property for an indefinite term, subject only to the termination provisions of 'Exhibit A'.*" (Emphasis added.)

On the basis of this finding, and others, the trial court granted judgment for the defendant Sil-Flo holding that it was entitled to the possession of the real property, the subject of these two agreements. We find no ambiguity to be created by the verbiage "on a month to month basis," for, when the finding is read as a whole, it is reasonably clear that this expression refers to Sil-Flo's obligation to pay rent. There was no question in this previous action but what Bowen had given notice of cancellation of these agreements [10] and if the court were hold-

---

9. This is made clear in "plaintiff's opening memorandum of points and authorities," filed in the forcible detainer action which stated the plaintiff's "propositions" as these:

"1. The instruments constitute a lease and royalty agreement and is not a severance of the ore in place by deed.

"2. Defendant is a tenant at will under the instruments and evidence, entitling plaintiff to sue for possession.

\* \* \* "

[Two additional "propositions" are omitted which deal with the contention that the defendant in that action, Sil-Flo, had breached the agreement.]

Further confirmation of this position of Bowen arises from the following statement of his counsel during the trial of that action:

"Our principal contention is that there is no terms set forth in this lease. There must be a term of beginning and an end. Therefore this is not a valid grant of anything. There is no term fixed. Is counsel going to fix the term, or what? The law is that there has to be a term, and it is void unless there is a term."

10. See Exhibit 1 in Civil Action No. 117905.

ing that this was a month to month tenancy, or a tenancy at will, Bowen would have prevailed in the 1961 action rather than Sil-Flo.

The interpretation of these agreements, insofar as this issue is concerned, was thus, as we have seen, directly before the court in this previous litigation and accordingly, as between these parties, this issue is settled for all time. Heywood v. Ziol, 91 Ariz. 309, 312, 372 P.2d 200, 202 (1962); Cannon v. Arizona Game & Fish Commission, 85 Ariz. 1, 5, 330 P.2d 501, 503 (1958); and *see* 50 C.J.S. Judgments § 740, at p. 247.

This is not a case in which the "merits of title" were determined in a wrongful detainer action. *See* Taylor v. Stanford, 100 Ariz. 346, 414 P.2d 727 (1966); Merrifield v. Merrifield, 95 Ariz. 152, 388 P.2d 153 (1963); Olds Bros. Lumber Co. v. Rushing, 64 Ariz. 199, 167 P.2d 394 (1946); Fenter v. Homestead Development and Trust Co., 3 Ariz.App. 248, 413 P.2d 579 (1966); and Reeves v. City of Phoenix, 1 Ariz.App. 157, 400 P.2d 364 (1965). The right to possession in the prior action was determined by an interpretation of these same written agreements, and hence the following language from *Heywood, supra,* is pertinent:

"This issue [right to possession] can only be determined after a presentation of the facts and attending circumstances upon which the right to possession is claimed. However, in the course of such determination it often becomes necessary to resolve both subsidiary issues of fact and law in order to determine who is entitled to possession and these issues are also res judicata."

91 Ariz. 311, 372 P.2d 200.

Supporting the above assertion that "issues of * * * law" become res judicata between the same parties, when the subsequent litigation pertains to the same subject matter, is our decision of First National Bank of Arizona v. Otis Elevator Co., 8 Ariz.App. 291, 445 P.2d 848 (1968), and authorities cited therein.

Accordingly, we find the trial court's determination here, that these agreements are terminable only in the event of a breach of the lessee's obligations under these agreements, to be proper under the law of res judicata. Hence, we do not independently solve the interesting question of whether the true intent of these parties was to create an irrevocable license or a right in land in the nature of a *profit a prendre.* *See* 3 American Law of Mining § 14.2, at 3–11.

## DID EITHER PARTY PROVE "TITLE" TO THE PLACER CLAIMS?

 In view of its victory below, Sil-Flo has good reason not to question Bowen's placer rights and has not done so in its brief filed in this court. If the judgment below is affirmed, it can only gain by the issuance of a patent to Bowen as to his placer claims.

Were this ordinary litigation disposed of in the busy gristmill of our judicial system, abstinence by the court from adjudicating in this area of non-controversy, would not only be proper but necessary. Moore v. Bolin, 70 Ariz. 354, 356, 220 P. 2d 850, 851 (1950). But this action, in addition to being one in declaratory judgment to determine the rights of the parties under the 1954 and 1955 agreements,[11] is an

---

11. Neither party has questioned that other causes of action may be tried together with the "adverse claim." The applicable federal statute appears to leave procedural matters largely to the control of the jurisdiction in which the suit is brought:

"* * * but the form of action is not provided for by the statute; and, apparently, an action at law or a suit in equity would lie, as either might be

appropriate under the particular circumstances,—an action to recover possession when plaintiff is out of possession, and a suit to quiet title when he is in possession." Perego v. Dodge, 163 U.S. 160, 165, 16 S.Ct. 971, 973–974, 41 L.Ed. 113 (1896).

Our practice liberally permits joinder of claims between the same parties. *See* Rule 18(a), R.Civ.P., 16 A.R.S.

adverse suit brought in pursuance of 30 U.S.C.A. § 30. Such an action is affected by U.S.C.A. § 32, which, in part, reads:

"If, in any action brought pursuant to section 30 of this title, title to the ground in controversy shall not be established by either party, the jury *shall* so find, and judgment *shall* be entered according to the verdict." (Emphasis added.)

In Bowen v. Chemi-Cote, *supra,* our Supreme Court stated:

"In an adverse proceeding, the court may make one of the three determinations: That the plaintiff is entitled to possession of the claim; that the defendant-applicant is entitled to possession of the claim; that neither are entitled to possession."

102 Ariz. 427, 432 P.2d 439.

The law appears to be settled that this duty to determine whether the pending patent application is valid is not one that can be sidestepped by the court, and that it is the duty of the appellate court, if this issue was not resolved below, to make the required determination on appeal. Tonopah Ralston Mining Co. v. Mt. Oddie United Mines Co., 49 Nev. 420, 248 P. 833 (1926), and authorities cited therein.

■ An examination of this record reveals no showing of any discovery or development work on the placer claims other than upon ore which is of the same nature and in the very same bed or beds as are determined in this action to validate the lode claims.[12] This same ore cannot be the predicate for additional placer claims. Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567 (1920) (*see* quote, note 4, *supra*).

■ Admittedly, Sil-Flo made no showing of any independent rights in these placer claims but Bowen cannot rely, in such a proceeding as this, upon the weakness of Sil-Flo's title. Thomas v. Chisholm, 13 Colo. 105, 21 P. 1019 (1889).

Accordingly, the judgment must be modified to contain a declaration as required by 30 U.S.C.A. § 32 that neither party established right to possession to areas outside of the four lode claims in question. Tonopah Ralston Mining Co. v. Mt. Oddie United Mines Co., *supra,* 248 P. at 835.

SHOULD BOWEN BE HELD TO HOLD ANY AFTER-ACQUIRED TITLE IN TRUST FOR SIL-FLO TO THE EXTENT OF ITS RIGHTS?

■ Inasmuch as this litigation is not binding upon the United States Government, Bowen v. Chemi-Cote Perlite Corp., 102 Ariz. 423, 427, 432 P.2d 435, 439 (1967), those provisions of the decree declaring that any title acquired by Bowen from the United States Government shall be held in trust for Sil-Flo to the extent of Sil-Flo's rights in these claims, conceivably may have future significance. It is our view that this portion of the decree is supported by the law of estoppel.

By warranting his title to his two lode mining claims, Bowen has received rents in excess of $15,000. He is the one who purported to do the necessary discovery and monumenting of the two lode claims which Sil-Flo purchased for valuable consideration, and he has stood by over the years watching Sil-Flo develop its properties.

■ Generally, equitable principles apply in litigation pertaining to mining claims. *See* Noble Gold Mines Co. v. Olsen, 57 Nev. 448, 66 P.2d 1005 (1937); Nugget Properties, Inc. v. County of Kittitas, 71 Wash.2d 760, 431 P.2d 580 (1967). Indeed, it has been stated that these equitable principles are " * * * more relentlessly enforced in their application to mines

12. Bowen's placer application (Exhibit 28 in evidence) makes claim that the development work consists of "OPEN PITS." The location of open pits on the "PROPERTY MAP" attached to the application shows pits, among others, which are located on the Elva F. No. 1 and Superior Perlite No. 1 lode claims, these two pits being the largest shown out of the five depicted. These two pits were dug almost exclusively by Sil-Flo.

and mining." 2 American Law of Mining § 8.5, at 196.

Here, we have the elements of estoppel by deed (an express warranty in the 1954 agreement), *see* 31 C.J.S. Estoppel § 21, at p. 309, and 28 Am.Jur.2d Estoppel and Waiver § 5, at 603–604. Additionally, there are the necessary elements for the imposition of a judicial estoppel (by the sworn pleadings and testimony in the unlawful detainer action), *see* Adams v. Bear, 87 Ariz. 288, 350 P.2d 751 (1960). Additionally, we have the necessary elements for equitable estoppel (in Bowen's performance of the discovery work on Sil-Flo's lode claims, in the payment of royalties to Bowen under the lease agreements, and in the expenditures by Sil-Flo in the development of its two lode claims), *see* Jantzon v. Arizona Copper Co., 3 Ariz. 6, 20 P. 93 (1889); Nugget Properties, Inc. v. County of Kittitas, *supra;* and *see generally* Builders Supply Corporation v. Marshall, 88 Ariz. 89, 352 P.2d 982 (1960).

The imposition of a constructive trust, as to any after-acquired title that Bowen might receive which would be contrary to the rights of Sil-Flo, as established in this decree, is an appropriate vehicle under our law to remedy the wrong that would be committed by any preemption of Sil-Flo's possessory rights by Bowen through his patent application. *See* Markel v. Phoenix Title & Trust Co., 100 Ariz. 53, 58, 410 P.2d 662, 665 (1966), and authorities cited therein.

The rendition of this decision shall constitute a modification of the decree rendered below so as to include a declaration that neither party to this action established a right of possession as to the areas outside of the four lode claims, Elva F. No. 1, Sandy No. 1, David R. No. 1 and Superior Perlite No. 1. As so modified, the judgment is affirmed.

HATHAWAY, J., and THOMAS TANG, Superior Court Judge, concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge THOMAS TANG was called to sit in his stead and participate in the determination of this decision.